STATE of Missouri, Respondent,

v.

John A. SHY, Appellant.

No. 15695.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 1, 1988.

---

Lew Kollias, John Klosterman, Columbia, for appellant.

Randall L. Head, Pros. Atty., Ironton, for respondent.

Before FLANIGAN, P.J., and HOGAN and MAUS, JJ.

FLANIGAN, Presiding Judge.

The trial court, after a nonjury trial, found defendant John Shy guilty of driving a motor vehicle upon the highways of this state while his operator's license was revoked, in violation of § 302.321,[1] and sentenced him to 120 days' imprisonment in the Iron County jail. Defendant appeals.

Defendant's sole point is that the evidence is insufficient to support the conviction "in that the state failed to present sufficient evidence that defendant was not driving within the terms of a valid hardship driving privilege."

The findings of the trial court in a jury-waived criminal case have the force and effect of a verdict of a jury. Mo. Const. art. I, § 22(a); *State v. Northern*, 472 S.W. 2d 409, 411[3] (Mo.1971). In determining the validity of defendant's point, this court must view the evidence in the light most favorable to the state, accept all substantial evidence and all legitimate inferences fairly deducible therefrom tending to support the finding of guilt, and reject contrary and contradictory evidence. *State v. Petrechko*, 486 S.W.2d 217, 218[1] (Mo. 1972). All evidence unfavorable to the state must be disregarded. *State v. Unverzagt*, 721 S.W.2d 786 (Mo.App.1986). The defendant offered evidence, and the submissibility of the case will be determined upon all of the evidence. *State v. Buck*, 754 S.W.2d 925, 926 (Mo.App.1988).

Defendant's brief concedes that the state adduced evidence which showed that defendant's license had been revoked and that he drove a motor vehicle upon "the highways of the state."

The offense took place at approximately 5:30 p.m. on January 29, 1988, in Iron County. State's witness Donnie Ivy, a deputy sheriff, testified that he stopped the defendant on Highway 143. Defendant was driving a Ford van.

Ivy testified: "I knew Shy's driving license was revoked because I have arrested him three or four times for driving while revoked in the past small period of time. Shy did not produce a driver's license for me. He produced an order approving an application for hardship driving privilege. At the time of the traffic stop I had a computer check run on Shy's driver's license status. State's Exhibit D is a computer printout of Shy's driving record from 1979 to 1987."

State's Exhibit D was received into evidence but is not contained in the record on appeal.

The parties stipulated that the court would take judicial notice of an "Order Approving Application for Hardship Driving Privilege" entered by the Associate Division of the Circuit Court of Iron County on October 13, 1987. The order granted defendant "the limited privilege of operating a motor vehicle upon the highways under the provisions of § 302.309 in connection with his occupation or employment only." The order also provided: "This limited driving privilege is for a period beginning the 13th day of October 1987, and this order shall expire at midnight on March 5, 1988, unless sooner revoked in accordance with law.... A copy of this order shall be used by the applicant in lieu of the operator's license during the period designated above ... and applicant will keep a copy on his person while operating a motor vehicle under this order...."

Testifying in his own behalf, defendant stated that when he was stopped by deputy Ivy, "I was going on Highway 143 to Jim Brewington's place to take measurements to give them a material list and pick up materials to build a sun deck." Asked by his own counsel what business he was engaged in on that date, defendant answered, "I'm trying self-employment as a carpenter." When his attorney asked defendant how long he had been engaged in that line of work in this area as a builder, defendant's reply was, "Well, I hadn't done any, really, to speak of." He also said that Brewington, who was his cousin, had "called" him and asked him "to come and take them measurements."

On cross-examination defendant stated that "the last regular job I had where I wasn't self-employed was in June 1986."

1. All references to statutes are to RSMo 1986, V.A.M.S.

At the trial, held on March 28, 1988, defendant said that he had not done the work for Brewington "yet."

He also admitted that on February 10, 1988, he filled out an "Application and Affidavit for Public Defender Services." That application, admitted without objection into evidence, contained questions which defendant answered or left blank. They include: "3. Do you have a job? ___yes _x_ no. Who do you work for? _____. What do you do? _____. How much do you make? ____ per ____. How many hours do you work a week? ____. If you don't have a job, how long since you last worked? 6–86."

█ Defendant's point assumes that the state had the burden of proving that defendant was not driving within the terms of his hardship driving privilege. For the reasons which follow, this court holds that the assumption and the point are invalid.

Section 302.321, which defines the offense charged in the information, makes no mention of hardship driving privilege. Section 302.309.3, which deals with hardship driving privileges, reads, in pertinent part:

"(2) When any court of record having jurisdiction finds that a chauffeur or operator is required to operate a motor vehicle in connection with his business, occupation or employment, the court may grant such limited driving privilege as the circumstances of the case justify if the court also finds undue hardship on the individual in earning a livelihood, and while so operating a motor vehicle within the restrictions and limitations of the court order the driver shall not be guilty of operating a motor vehicle without a valid driver's license."

Section 302.309.3(2) constitutes no part of the description of the offense defined in § 302.321. That being so, whether defendant's operation of the van on the occasion in question was within "the restrictions and limitations" of his limited driving privilege was a matter of affirmative defense. The state did not have the burden of proving that defendant was not driving within said restrictions and limitations.

"[W]hen the exception constitutes a part of the description of the offense sought to be charged the information must negative the exception, and if it does not do so, no offense is charged.... *But where such exceptions are not a part of the statutory definition of the crime, where they are contained in distinct and independent clauses of the statute, or in separate sections, it is not usually necessary either to plead them or to prove them. Such exceptions are pure matters of affirmative defense."* (Citing authorities—Emphasis added.)

*Williams v. State,* 437 S.W.2d 82, 86 (Mo. 1969). To similar effect see *State v. Bridges,* 412 S.W.2d 455, 457[2] (Mo.1967); *State v. DeGroat,* 259 Mo. 364, 168 S.W. 702, 705 (1914); *State v. Holbert,* 399 S.W. 2d 142, 144–145[5] (Mo.App.1966).

The trial court could properly disbelieve defendant's testimony that he was on his way to Brewington's "place" to take measurements. There was evidence that the defendant had no job, worked for no one (including himself), and had done no work since June 1986. It cannot properly be said that defendant proved as a matter of law that his operation of the motor vehicle was within the "restrictions and limitations" of his hardship driving privilege.

The judgment is affirmed.

All concur.