# STATE OF CONNECTICUT *v.* STANLEY T. VALINSKI
## (SC 16132)

Norcott, Katz, Palmer, Sullivan and Vertefeuille, Js.

Argued April 19—officially released August 8, 2000

*Robert J. Scheinblum*, assistant state's attorney, with whom, on the brief, were *Andrew M. Wittstein*, supervisory assistant state's attorney, and *Dawn Gallo*, deputy assistant state's attorney, for the appellant (state).

*Robert J. McKay,* for the appellee (defendant).

*Opinion*

SULLIVAN, J. The issue in this certified appeal is whether a defendant charged with the operation of a motor vehicle while his license is under suspension in violation of General Statutes (Rev. to 1995) § 14-215 (c)[1] (driving under suspension) has the burden of persuasion regarding whether he was operating his motor vehicle *within the scope of a special operator's permit* (work permit) issued pursuant to General Statutes (Rev. to 1995) § 14-37a.[2] The defendant, Stanley T. Valinski,

[1] General Statutes (Rev. to 1995) § 14-215 provides: "(a) No person to whom an operator's license has been refused, or whose operator's license or right to operate a motor vehicle in this state has been suspended or revoked, shall operate any motor vehicle during the period of such refusal, suspension or revocation. No person shall operate or cause to be operated any motor vehicle, the registration of which has been refused, suspended or revoked, or any motor vehicle, the right to operate which has been suspended or revoked.

"(b) Except as provided in subsection (c) of this section, any person who violates any provision of subsection (a) of this section shall be fined not less than one hundred fifty dollars nor more than two hundred dollars or imprisoned not more than ninety days or be both fined and imprisoned for the first offense, and for any subsequent offense shall be fined not less than two hundred dollars nor more than six hundred dollars or imprisoned not more than one year or be both fined and imprisoned.

"(c) Any person who operates any motor vehicle during the period his operator's license or right to operate a motor vehicle in this state is under suspension or revocation on account of a violation of subsection (a) of section 14-227a or section 53a-56b or 53a-60d or pursuant to section 14-227b, shall be fined not less than five hundred dollars nor more than one thousand dollars and imprisoned not more than one year, thirty consecutive days of which may not be suspended or reduced in any manner."

[2] General Statutes (Rev. to 1995) § 14-37a provides: "(a) Any person whose operator's license has been suspended pursuant to any provision of [chapter 246 or 248 of the General Statutes, governing motor vehicles and vehicle highway use, respectively], except pursuant to section 14-215 for operating under suspension or pursuant to section 14-140 for failure to appear for trial, may make application to the commissioner of motor vehicles for a special permit to operate a motor vehicle to and from such person's place of employment or, if such person is not employed at a fixed location, to operate a motor vehicle only in connection with, and to the extent necessary, to properly perform such person's business or profession.

was convicted, after a trial in part to the court and in part to the jury,[3] of one count each of driving under suspension in violation of § 14-215 (c) and operating a motor vehicle while under the influence of intoxicating liquor or drug (driving under the influence) in violation

"(b) The commissioner may, in his discretion upon a showing of significant hardship, grant each such application that is submitted in proper form and contains such information and attestation by the applicant as the commissioner may require. In determining whether to grant such application, the commissioner may also consider the driving record of the applicant and shall ascertain that the suspension is a final order that is not under appeal pursuant to section 4-183. A special operator's permit shall not be issued pursuant to this section to any person for the operation of a motor vehicle for which a public passenger transportation permit or commercial driver's license is required or to any person whose operator's license has been suspended previously pursuant to section 14-227b.

"(c) A special operator's permit issued pursuant to this section shall be of a distinctive format and shall include the expiration date and the legend 'work only'.

"(d) Any person issued a special operator's permit pursuant to this section who operates a motor vehicle during the period of the permit for a purpose not authorized by the conditions of the permit shall, upon receipt of written report of a police officer, in such form as the commissioner may prescribe, of such unauthorized operation, be subject to a civil penalty of not more than five hundred dollars. Any person who makes improper use of a special operator's permit issued pursuant to this section or in any manner alters any such permit or who loans or sells such permit for use by another person shall be subject to the penalties provided by section 14-147.

"(e) If a person issued a special operator's permit pursuant to this section has his operator's license suspended by the commissioner in connection with any motor vehicle violation or other offense for which suspension action is authorized, the special operator's permit shall be deemed revoked on the effective date of such suspension, and any such person with notice of the suspension who operates a motor vehicle shall be operating under suspension and shall be subject to double the penalties provided by the applicable provisions of subsection (b) of section 14-111 and section 14-215.

"(f) Any decision made by the commissioner under this section shall not be subject to appeal pursuant to the provisions of chapter 54 or any other provisions of the general statutes.

"(g) The commissioner may adopt regulations in accordance with the provisions of chapter 54 to implement the provisions of this section."

[3] The defendant's case was tried to a jury except with respect to the count alleging a violation of General Statutes § 14-230 (a). See footnote 5 of this opinion and accompanying text.

of General Statutes § 14-227a,[4] and of the infraction of failure to drive on the right in violation of General Statutes § 14-230 (a).[5] The defendant appealed from the trial court's judgment of conviction to the Appellate Court, which reversed the trial court's judgment only as to the defendant's conviction of driving under suspension in violation of § 14-215 (c) and remanded the case for a new trial on that count. *State* v. *Valinski*, 53 Conn. App. 23, 42, 731 A.2d 311 (1999). We granted the state's petition for certification to appeal; *State* v. *Valinski*, 249 Conn. 924, 733 A.2d 847 (1999); and now conclude that the Appellate Court improperly had determined that the trial court's jury instructions impermissibly diluted the state's burden of proof with respect to the driving under suspension count. Accordingly, we reverse the judgment of the Appellate Court with respect to that count.

The Appellate Court's opinion sets forth the following relevant facts that the jury reasonably could have found. "The parties stipulated that on December 15, 1994, the defendant was convicted of [driving] under the influence . . . in violation of § 14-227a (a).[6] As a result of the conviction, the department of motor vehicles (department) suspended the defendant's operating priv-

[4] General Statutes § 14-227a provides in relevant part: "(a) Operation while under the influence. No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. . . ."

The legislature made amendments to § 14-227a in 1995 and 1999 that are not relevant to this appeal. See Public Acts 1999, Nos. 99-218, §§ 3, 4, and 99-255, § 1; Public Acts 1995, Nos. 95-257, §§ 12, 21, and 95-314, § 1. For convenience, we refer to the current revision of § 14-227a throughout this opinion.

[5] General Statutes § 14-230 (a) provides in relevant part: "Upon all highways, each vehicle . . . shall be driven upon the right except [as otherwise provided in this section]. . . ."

[6] "The parties also stipulated that this predicate conviction was an element of the offense of § 14-215 (c)." *State* v. *Valinski*, supra, 53 Conn. App. 26 n.5.

ileges on January 13, 1995.[7] On January 14, 1995, the department issued a work permit to the defendant.[8]

"On Saturday, May 13, 1995, State Trooper Kevin Albanese stopped the defendant's vehicle on Route 44 in Canaan after twice observing it swerve in and out of the oncoming lane and nearly strike a guardrail post after it drifted over the white shoulder line. While waiting for the defendant's license and registration, Albanese asked the defendant where he had been. The defendant replied that he was returning from a fishing trip with his dog. After Albanese reviewed the work permit that the defendant handed him and noticed the restrictions on the permit, he again inquired of the defendant where he had been. This time, the defendant replied that he was returning from a fishing trip with several business associates, but, when asked, was unable to supply their names.

"After receiving the defendant's information, Albanese contacted Troop B in North Canaan and confirmed that the defendant's right to operate a motor vehicle was under suspension. Albanese detected a strong odor of alcohol and noticed that the defendant's eyes were red and glassy. On the basis of the defendant's

[7] "Terry Zietler, a department employee who decides whether to accept applications for a [work permit], testified that the defendant's right to operate was suspended on January 13, 1995. The suspension notice sent to the defendant on January 3, 1995, however, indicates that '[e]ffective January 14, 1995, [the defendant's] Connecticut driver's license [was] suspended.'" *State* v. *Valinski*, supra, 53 Conn. App. 26 n.6.

[8] "The record indicates that with respect to a separate incident unconnected to this appeal, the defendant, a self-employed advertising agent, applied for a work permit on September 7, 1994, which was valid until December 13, 1994. In a letter dated January 9, 1995, the defendant requested an extension of the 1994 work permit. Thereafter, the defendant's work permit was extended until January 14, 1996. In the permit application, and again in his letter dated January 9, 1995, the defendant indicated that he needed the permit only to drive to meet with clients and to shoot, record and edit radio and television commercials." *State* v. *Valinski*, supra, 53 Conn. App. 26–27 n.7.

erratic driving, the strong odor of alcohol and the appearance of the defendant's eyes, Albanese believed that the defendant was operating while under the influence of alcohol. After administering three field sobriety tests, Albanese confirmed his belief.[9] Thereafter, Albanese arrested the defendant and transported him to Troop B, where the defendant refused to submit to any further testing." Id., 26–28.

The following procedural history is relevant to this appeal. The defendant was charged in the first part of a two part information with two counts of driving under suspension in violation of § 14-215, one count of driving under the influence in violation of § 14-227a (a), and with the infraction of failure to drive on the right in violation of § 14-230 (a). "In [the second] part . . . of the information, the state alleged that the defendant was subject to an enhanced penalty based on a previous conviction for [driving] under the influence . . . ." Id., 25. "Following a jury trial, a verdict of guilty was returned on the three noninfraction counts: two counts of [driving] under suspension and one count of [driving] under the influence . . . . [With respect to] the [infraction] of failure to drive on the right, the court made a finding of guilty." Id., 28. The defendant subsequently entered a conditional plea of nolo contendere as to the second part of the information. Id., 25. Thereafter, the trial court granted the defendant's motion to set aside

---

[9] "The prosecutor conducted the following examination of Albanese:

[Dawn Gallo, Deputy Assistant State's Attorney]: What did [the result of the third field sobriety test] indicate?

[Albanese]: There was another building block with the priors that the person was operating under the influence.

[Gallo]: Now, based upon your experience and training and what you had just seen the defendant do, you are talking with him and you are following him in your car, did you form an opinion as to the state of sobriety?

[Albanese]: Yes.

[Gallo]: And what was that opinion?

[Albanese]: I believe he was operating under the influence." (Internal quotation marks omitted.) *State* v. *Valinski*, supra, 53 Conn. App. 27–28 n.8.

the verdict with respect to one of the two counts of driving under suspension. Id., 28. The trial court sentenced the defendant to one year imprisonment, execution suspended after serving the mandatory minimum of thirty days, and two years probation, for the remaining count of driving under suspension, and, for the count of driving under the influence, one year imprisonment, execution suspended after serving the mandatory minimum of ten days, consecutive to the remaining count of driving under suspension, and two years probation. Id., 28 n.9. The trial court imposed a $35 fine for the infraction of failure to drive on the right.

On appeal to the Appellate Court, the defendant claimed that, with respect to his conviction for driving under suspension,[10] "(1) as a matter of law, § 14-215 is inapplicable to the facts of this case [and that the prosecutor engaged in misconduct by charging him with a violation thereof], (2) the state's evidence was insufficient to sustain a guilty verdict, (3) the state engaged in prosecutorial misconduct by misrepresenting to the jury that it would call a certain witness and (4) the trial court's unchallenged instructions were misleading and confusing." Id., 25; see also id., 28–29 n.10.

The Appellate Court rejected the defendant's first claim, namely, that he was exempt from prosecution under § 14-215 inasmuch as he possessed a work permit issued pursuant to § 14-37a. Id., 28–29. The Appellate Court also rejected the defendant's related claim that the prosecutor had engaged in misconduct by charging him with a violation of § 14-215 (c) because the prosecutor knew that the defendant had been issued a work permit. Id., 28 n.10, 30–31. The Appellate Court did

[10] The Appellate Court concluded that the defendant had abandoned any claim that his convictions under §§ 14-227a (a) and 14-230 (a) should be reversed. *State* v. *Valinski*, supra, 53 Conn. App. 25 n.3. Therefore, the Appellate Court concluded that "[t]he only conviction at issue . . . [was] the defendant's conviction under § 14-215 (c)." Id.

not reach the defendant's second and third claims. See generally id., 31. The Appellate Court, however, reversed in part the trial court's judgment based on the defendant's fourth claim; the Appellate Court concluded that the trial court improperly had instructed the jury that the defendant was required to prove by a fair preponderance of the evidence that he was driving his vehicle within the scope of his work permit. Id., 38, 41–42. The Appellate Court held that, with respect to the driving under suspension count, the trial court's instructions unconstitutionally diluted the state's burden of proving the defendant's guilt beyond a reasonable doubt. Id., 38. Because the Appellate Court based its partial reversal of the trial court's judgment on the trial court's improper instruction with respect to the defendant's burden of proving that he was driving within the scope of his work permit, the Appellate Court did not consider the defendant's claims that: (1) the trial court failed to instruct the jury properly regarding the effect of the defendant's stipulation that he previously had been convicted of a violation of § 14-227a (a); id., 36 n.18; and (2) the sequence of the trial court's jury instructions improperly had diluted the state's burden of proof. Id.

We granted the state's petition for certification limited to the following issue: "Did the Appellate Court properly conclude that, with respect to the judgment of conviction for [driving] under suspension, the trial court's instruction, placing the burden of persuasion on the defendant regarding whether he was operating under a work permit, impermissibly diluted the state's burden of proof?" *State* v. *Valinski*, supra, 249 Conn. 925.

We answer the certified issue in the negative and, accordingly, reverse the Appellate Court's judgment with respect to the defendant's conviction for driving under suspension. Therefore, we remand the case to

the Appellate Court for consideration of the defendant's remaining claims, which the Appellate Court did not reach in the defendant's initial appeal.[11]

The state claims that the trial court's jury instructions did not dilute the state's burden of proving any element of the offense of driving under suspension. The state supports this claim by arguing that driving within the scope of a valid work permit issued pursuant to § 14-37a is an affirmative defense to the offense of driving under suspension and, therefore, that it was proper for the trial court to instruct the jury that the defendant bore the burden of persuasion on this issue. The state further argues that the affirmative defense of driving within the scope of a valid work permit issued pursuant to § 14-37a is constitutional because it does not negate any of the elements of the offense of driving under suspension.

The defendant counters that the trial court's jury instructions were improper because they unconstitutionally[12] diluted the state's burden of proof with respect

[11] The Appellate Court's conclusion with respect to the defendant's claim that he was exempt from prosecution under § 14-215 (c) is unaffected by this opinion. Although the defendant raises arguments in his brief that might be construed as an attempt to seek review of his claim that he was exempt from prosecution under § 14-215 (c) because he possessed a work permit issued pursuant to § 14-37a, he failed to file a cross petition for certification, seeking review of the Appellate Court's judgment with respect to that issue. See Practice Book § 84-4 (b). Therefore, we need not consider such arguments. See *Jones* v. *Crystal*, 242 Conn. 599, 603–604, 699 A.2d 961 (1997).

[12] Although the defendant claims that his due process rights under both the state constitution; see Conn. Const., art. I, § 8; and the federal constitution; see U.S. Const., amend. XIV; were violated, he "does not claim . . . that he is entitled to any greater protection under the due process clause of the state constitution than he is under the analogous provision of the federal constitution. For purposes of this appeal, therefore, we treat the state and federal due process clauses as embodying the same level of protection." *State* v. *Austin*, 244 Conn. 226, 237 n.11, 710 A.2d 732 (1998).

Although the defendant also cites to the constitution of Connecticut, article first, § 9, and the sixth amendment to the United States constitution, he has failed to explain, in his brief or elsewhere, how his rights under these provisions were violated. Accordingly, we consider any claim under

to the driving under suspension count. In support of this claim, the defendant argues that the trial court's jury instructions improperly shifted the burden of persuasion to him on the issue of whether he had been driving his vehicle within the scope of a valid work permit issued pursuant to § 14-37a. The defendant argues that such a shift was improper because driving within the scope of a work permit is not an affirmative defense to the offense of driving under suspension. We agree with the state.

The Appellate Court opinion sets forth the following additional, relevant facts necessary to our disposition of this appeal. "In its charge, the trial court instructed the jury on the law governing the case and its application during deliberations. The court first instructed the jury regarding the state's burden of proving guilt beyond a reasonable doubt.[13] Thereafter, the court instructed

these provisions to be abandoned. See, e.g., *State* v. *Shashaty*, 251 Conn. 768, 772 n.4, 742 A.2d 786 (1999) ("[a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly" [internal quotation marks omitted]).

[13] The trial court instructed the jury in relevant part: "Now, in this case, as in all criminal prosecutions, the defendant is presumed to be innocent until proven guilty. Now, he must be proven guilty beyond a reasonable doubt. Now, this presumption of innocence was with this defendant when he was first presented for trial in this case. It continues with him throughout the trial unless and until such time as all of the evidence produced here . . . satisfies you beyond a reasonable doubt that he is guilty.

"Now, the burden to prove the defendant guilty of the crime of which he is charged is upon the state. The defendant does not have to prove his innocence. This means that the state must prove, beyond a reasonable doubt, each and every element necessary to constitute the crime charged.

"Whether the burden of proof resting upon the state is sustained depends not on the number of witnesses nor on the quantity of the testimony, but on the nature and quality of the testimony. Please bear in mind that one witness' testimony is sufficient to convict if it establishes all of the elements of the crime beyond a reasonable doubt.

"Now, the meaning of reasonable doubt can be arrived at by emphasizing the word reasonable. It is not a surmise . . . not a guess or mere conjecture. Nor is it doubt suggested by ingenuity of counsel or of a juror not warranted by the evidence. It is such a doubt as, in serious affairs that concern you, you would heed, that is, such a doubt as would cause reasonable men and

[the jury] on the specific charges against the defendant.[14] Following the instruction on the charge of [driving] under the influence . . . the court instructed the jury on direct and circumstantial evidence and that the cumulative effect of reliance on either type of evidence must be the conclusion that the elements were proven beyond a reasonable doubt. Immediately thereafter, the court instructed the jury regarding the scope of the work permit and the defendant's burden of proving by a preponderance of the evidence that he was operating a motor vehicle within that scope.[15]

women to hesitate to act on it in matters of importance. It is not hesitation springing from any feelings of pity or sympathy for the accused or any other person who might be affected by your decision. It is, in other words, a real doubt, an honest doubt, a doubt that has its foundation in the evidence or lack of evidence. It is doubt that is honestly entertained and reasonable in light of the evidence after a fair comparison and careful examination of the entire evidence in the case.

"Proof beyond a reasonable doubt does not mean proof beyond all doubt. The law does not require absolute certainty on the part of the jury before it returns a verdict of guilty. The law requires that, after hearing all of the evidence, if there is something in the evidence or lack of evidence that leaves in the minds of the jurors as reasonable men and women a reasonable doubt as to the guilt of the accused, then the accused must be given the benefit of the doubt and must be acquitted. Proof beyond a reasonable doubt is proof that precludes every reasonable hypothesis except guilt and is inconsistent with any other rational conclusion."

[14] The trial court first instructed the jury on the offense of driving under suspension and then on the offense of driving under the influence. The trial court charged the jury with respect to the former offense as follows: "[The defendant] is . . . charged with [driving] under suspension in two counts. And I will bring to your attention the fact that there is a stipulation of the parties relative to that offense. In addition, there has been evidence offered to you concerning the element of that [driving] under suspension, and I will instruct you that a person commits the crime of [driving] under suspension when he operates a motor vehicle on a public highway when his right or privilege to operate has been suspended.

"Now, in one of those counts, there is the claim that the defendant was [driving] under suspension when his license was suspended for a conviction of a violation of . . . § 14-227a. There is a stipulation for you to consider on that that . . . relates directly to those facts, those elements."

[15] The trial court instructed the jury in relevant part: "Now, ladies and gentlemen, in this case, there was submitted to you, and will be submitted to you, by way of a document and by way of testimony, that, at the time

"Later in the charge, the court repeated that 'the state must prove beyond a reasonable doubt that the defendant was under the influence of intoxicating liquor while operating the motor vehicle' and 'it has been the obligation of the state to prove all of the elements charged against the defendant beyond a reasonable doubt.' " *State* v. *Valinski,* supra, 53 Conn. App. 33–35.

"Our analysis begins with a well established standard of review. When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Denby,* 235 Conn. 477, 484–85, 668 A.2d 682 (1995). "[I]n appeals involving a

and place alleged in the information, that is, in May of 1995, the defendant was operating under a [work] permit. Now, [a work permit] issued in accordance with § 14-37a . . . permits a person to operate a motor vehicle to and from his place of employment or, if he's not employed at a specific or fixed location, to operate a motor vehicle in connection with, and to the extent necessary, to perform his business or profession.

"Now . . . if you find by a preponderance of the evidence that the defendant was operating his motor vehicle within the context of a [work] permit, you may find the defendant not guilty.

"Now, proof by a preponderance of the evidence means, considering all of the evidence fairly and impartially, enough evidence as produces in your mind a reasonable belief that is sought to be proven is more likely true than not true. This means you take all the evidence offered on this issue by both the defendant and state, you weigh it and balance it. If the better and weightier evidence inclines in the defendant's favor, then he has sustained his burden in proving that defense by a preponderance of the evidence."

constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Delgado*, 247 Conn. 616, 625, 725 A.2d 306 (1999).

We begin by providing the relevant constitutional framework applicable to our determination of whether the jury instructions in this case were proper. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). "It is axiomatic that the state is required to prove all the essential elements of the crimes charged beyond a reasonable doubt in order to obtain a conviction. . . . A jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and . . . afford[s] proper guidance for their determination of whether those elements were present." (Citations omitted; internal quotation marks omitted.) *State* v. *Milardo*, 224 Conn. 397, 410, 618 A.2d 1347 (1993). "Furthermore, it is well established that [a]n instruction that dilutes the state's burden, or places a burden on the defendant to prove his innocence, is unconstitutional. *Sandstrom* v. *Montana*, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)." (Internal quotation marks omitted.) *State* v. *Taylor*, 239 Conn. 481, 512–13, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997).

In contrast, "[i]t is constitutionally permissible for the state to place the burden on a criminal defendant to prove by a preponderance of the evidence elements which would constitute an affirmative defense but which do not serve to negate any essential element of the crime which the state has the burden of proving beyond a reasonable doubt in order to convict. *Patterson* v. *New York*, 432 U.S. 197, 210, 97 S. Ct. 2319,

53 L. Ed. 2d 281 [1977]." *State* v. *Arroyo*, 181 Conn. 426, 430, 435 A.2d 967 (1980). "If the State . . . chooses to recognize a factor that mitigates the degree of criminality or punishment . . . the State may assure itself that the fact has been established with reasonable certainty. To recognize at all a mitigating circumstance does not require the State to prove its nonexistence in each case in which the fact is put in issue, if in its judgment this would be too cumbersome, too expensive, and too inaccurate." *Patterson* v. *New York*, supra, 209.

In this case, the trial court unequivocally instructed the jury that it was the defendant's burden to prove that he was driving his vehicle within the scope of the work permit when he was arrested. See footnote 15 of this opinion. Thus, we must determine whether the legislature intended the work permit exception of § 14-37a to be an affirmative defense to a violation of § 14-215 (c), and, if so, whether such a scheme is constitutional.

I

We first consider whether the legislature intended § 14-37a to constitute an affirmative defense to a violation of § 14-215 (c). This issue requires us to construe §§ 14-215 (c) and 14-37a, and the relationship between the two provisions. "Statutory construction . . . presents a question of law over which our review is plenary. . . . According to our long-standing principles of statutory construction, our fundamental objective is to ascertain and give effect to the intent of the legislature. . . . In determining the intent of a statute, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Coelho* v. *ITT Hartford*, 251 Conn. 106, 110, 752 A.2d 1063 (1999).

We begin our analysis with the text of General Statutes (Rev. to 1995) § 14-215 (c), which provides in relevant part: "Any person who operates any motor vehicle during the period his operator's license or right to operate a motor vehicle in this state is under suspension or revocation on account of a violation of subsection (a) of section 14-227a . . . shall be fined not less than five hundred dollars nor more than one thousand dollars and imprisoned not more than one year, thirty consecutive days of which may not be suspended or reduced in any manner." Thus, the text of the statute unambiguously indicates that the state can establish a violation of § 14-215 (c) by proving that the defendant operated a motor vehicle while his license was under suspension for a violation of § 14-227a (a).

General Statutes (Rev. to 1995) § 14-37a provides in relevant part: "(a) Any person whose operator's license has been suspended pursuant to any provision of [chapter 246 or 248 of the General Statutes, governing motor vehicles and vehicle highway use, respectively] . . . may make application to the commissioner of motor vehicles [commissioner] for a special permit to operate a motor vehicle to and from such person's place of employment or, if such person is not employed at a fixed location, to operate a motor vehicle only in connection with, and to the extent necessary, to properly perform such person's business or profession. . . ." Thus, § 14-37a authorizes the commissioner to grant a limited driving privilege to a person who has had his or her operators' license suspended, in order to allow such person "to properly perform [his or her] business or profession."

We next consider the relationship between the text of §§ 14-215 (c) and 14-37a. We begin by noting that there is nothing in the text of § 14-215 (c) to suggest that the state is required to prove that a person charged with violating its provisions was operating his or her

motor vehicle outside the parameters of a work permit issued by the commissioner pursuant to § 14-37a. By contrast, were we to follow the reasoning of both the defendant and the Appellate Court, the state would be required to prove that a defendant was not operating his or her motor vehicle within the parameters of a work permit in every prosecution in which that defendant is charged with a violation of § 14-215 (c), notwithstanding the absence of any such element in the text of that statute.

In *State* v. *Tinsley*, 181 Conn. 388, 435 A.2d 1002 (1980), cert. denied, 449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981), we concluded that "[i]t is the general rule that where exceptions to a prohibition in a criminal statute are situated separately from the enacting clause, *the exceptions are to be proven by the defense.*" (Emphasis added.) Id., 402.[16] In its review of this case, the Appellate Court distinguished *Tinsley* by stating that "*Tinsley* involved a discussion of [a statute that] states the elements necessary to prove the crime charged and, in a separate clause, sets forth exceptions to a violation of the statute. Section 14-215, however, does not include exceptions to its violation." *State* v. *Valinski*, supra, 53 Conn. App. 39. The Appellate Court, however, did not provide any rationale for why the placement of the work permit exception to the prohibition of driving under suspension in a separate statute should make it any more likely for such an exception to be an element of § 14-215 (c) than if the exception were located in § 14-215 (c), itself. Nor can we find one. On the contrary, if, as we stated in *Tinsley*, the defendant must prove

---

[16] "This rule had its origin in an article by Theron Metcalf published anonymously in the American Jurist [of] October, 1832. After he was elevated to the bench in Massachusetts, Metcalf restated the rule in the leading case of *Commonwealth* v. *Hart*, 65 Mass. (11 Cush.) 130, 134 (1853). See [annot.] 153 A.L.R. 1218, 1222 [1944]. In *State* v. *Miller*, 24 Conn. 522, 529 (1856), this state recognized the rule. See also *State* v. *McGee*, 88 Conn. 353, 359, 91 A. 270 (1914)." *State* v. *Tinsley*, supra, 181 Conn. 402–403.

the application of an exception that resides *within the statute defining the substantive offense*, but not within that statute's enacting or prohibiting clause, then, surely, a defendant properly may be required to prove the application of an exception that, as in this case, is located *in a completely separate statute*. See *State* v. *Miller*, 24 Conn. 522, 529 (1856) (because general rule is that exceptions not within enacting clause of criminal statute are to be proven by defendant, *"if a subsequent statute*, or even a clause of exception in the same statute excuse[s], or except[s], persons particularly circumstanced, out of the general words, such excuse, or exception, must come by way of plea, or evidence [offered by the defendant]" [emphasis added; internal quotation marks omitted]); see also *United States* v. *Freter*, 31 F.3d 783, 788 (9th Cir.), cert. denied, 513 U.S. 1048, 115 S. Ct. 646, 130 L. Ed. 2d 551 (1994) ("a defendant who relies upon an exception to a statute . . . whether in the same section of the statute *or elsewhere*, has the burden of establishing and showing that he comes within the exception" [emphasis added; internal quotation marks omitted]).

The distinct effect on the allocation of the burden of persuasion stemming from words of a criminal statute that state an exception to culpability and appear as part of the enacting or prohibiting clause of the statute, on the one hand, and words that create an exception to culpability elsewhere, on the other hand, is well established. For example, in *State* v. *Anonymous*, 179 Conn. 516, 427 A.2d 403 (1980), we stated: "It is a general guide to the interpretation of criminal statutes that *when an exception is incorporated in the enacting clause of a statute*, the burden is on the prosecution to plead and prove that the defendant is not within the exception." (Emphasis added; internal quotation marks omitted.) Id., 520, quoting *United States* v. *Vuitch*, 402 U.S. 62, 70, 91 S. Ct. 1294, 28 L. Ed. 2d 601 (1971); see also *State*

v. *Beauton*, 170 Conn. 234, 241, 365 A.2d 1105 (1976) ("A significant factor in reaching our conclusion is that the words of the statute [requiring the state to prove a negative] *appear as part of the enacting or prohibition clause of the statute.* It is not an exception but a descriptive negative defining the corpus delicti." [Emphasis added.]).

As the foregoing cases make clear, the state must disprove an exception to culpability as an element of the crime when charging the defendant under a statute in which that exception is located within the enacting or prohibiting clause; see *State* v. *Anonymous*, supra, 179 Conn. 520; *State* v. *Beauton*, supra, 170 Conn. 241; whereas the defendant bears the burden of persuasion if the exception is not found within the enacting or prohibiting clause. See *State* v. *Tinsley*, supra, 181 Conn. 403. Therefore, we agree with the state that there is nothing in *Tinsley*, nor in any other case in our jurisprudence, to suggest that the legislature cannot define a substantive offense in one statute and provide an exception to culpability for a violation of that offense in another statute. See *State* v. *Wilkinson*, 176 Conn. 451, 465, 408 A.2d 232 (1979) ("where the legislature defines a crime as including certain elements, A and B, and gives notice that proof beyond a reasonable doubt of those elements will subject the violator to punishment, the existence of an affirmative defense, C, does not detract from the given nature of the crime, but rather adds another factor to the case which, if proved, may exonerate the accused").

A comparison of the two statutes at issue in this case reveals that the legislature defined the substantive offense of driving under suspension in § 14-215 (c) and provided an exception to culpability for a violation of that offense in § 14-37a. See footnotes 1 and 2 of this opinion. Thus, following the general rule of statutory construction that "where exceptions to a prohibition

in a criminal statute are situated separately from the enacting clause, the exceptions are to be proven by the defense"; *State* v. *Tinsley*, supra, 181 Conn. 402; we conclude that the legislature intended the work permit exception in § 14-37a to constitute an affirmative defense, for which the defendant bears the burden of persuasion, to the offense of driving under suspension in violation of § 14-215 (c).[17]

Other jurisdictions likewise have concluded that a defendant charged with driving under suspension has the burden of proving a work permit defense by a preponderance of the evidence. See *State* v. *Shy*, 761 S.W.2d 280, 282 (Mo. App. 1988); *State* v. *Bonn*, 101 Ohio App. 3d 69, 72, 654 N.E.2d 1346 (1995). In contrast, the defendant has not cited to any case in any jurisdiction in which a court has concluded that the government bears the burden of disproving a work permit exception beyond a reasonable doubt.

In reaching this conclusion, we reject the defendant's argument, which was accepted by the Appellate Court; see *State* v. *Valinski*, supra, 53 Conn. App. 40–41; that the state should bear the burden of disproving a work permit exception because "[a] defendant has the burden of persuasion only when it is *declared to be an affirmative defense* in the statute . . . ." (Emphasis in original; internal quotation marks omitted.) Id., 40. In support of this argument, the Appellate Court and the defendant rely on General Statutes § 53a-12 (b), which provides: "When a defense *declared to be an affirmative defense* is raised at a trial, the defendant shall have the burden

---

[17] We note that there is nothing in the legislative history of Substitute House Bill No. 7148, the bill eventually enacted as Public Acts 1993, No. 93-371, § 3, and codified at § 14-37a, indicating that the legislature, in adopting the work permit program, intended to amend § 14-215 (c) to add an element to the offense enumerated therein, thereby requiring the state, in prosecuting a violation of § 14-215 (c), to prove that a defendant was not operating within the parameters of a work permit.

of establishing such defense by a preponderance of the evidence." (Emphasis added.)

This argument fails because § 53a-12 (b) does not require the legislature expressly to declare that an exception to culpability is an affirmative defense for it to operate as an affirmative defense. See *State* v. *Littlejohn*, 199 Conn. 631, 640, 508 A.2d 1376 (1986) (concluding that statute of limitation was affirmative defense to crime notwithstanding legislature's failure expressly to declare it affirmative defense). Nor have we ever construed § 53a-12 (b) to require that all affirmative defenses be statutorily prescribed. See General Statutes § 53a-4 ("[t]he provisions of this chapter shall not be construed as precluding any court from recognizing other principles of criminal liability or other defenses not inconsistent with such provisions"); see also *State* v. *Wilkinson*, supra, 176 Conn. 464–65 (recognizing, as matter of common law, that defense of abandonment constitutes affirmative defense for which defendant bears burden of persuasion). Although the Appellate Court cited to *State* v. *Hart*, 221 Conn. 595, 611, 605 A.2d 1366 (1992), and *State* v. *Cole*, 50 Conn. App. 312, 319–20, 718 A.2d 457 (1998), aff'd, 254 Conn. 88, 755 A.2d 202 (2000), for the proposition that "[i]t is the prerogative of the legislature, *not the courts*, to establish affirmative defenses"; (emphasis added) *State* v. *Valinski*, supra, 53 Conn. App. 41; neither case expressed any view regarding the legitimacy of judicially recognized affirmative defenses. See generally *State* v. *Hart*, supra, 611; *State* v. *Cole*, supra, 319–20. Rather, both cases stand for the proposition that the legislature may prescribe affirmative defenses by statute. See *State* v. *Hart*, supra, 611; *State* v. *Cole*, supra, 319–20. Thus, if § 53a-12 (b) does not prohibit the recognition of common-law affirmative defenses, it would be unreasonable to conclude that § 53a-12 (b) abrogates the rule of statutory construction that "where excep-

tions to a prohibition in a criminal statute are situated separately from the enacting clause, the exceptions are to be proven by the defense." *State* v. *Tinsley*, supra, 181 Conn. 402.

We also reject the defendant's argument that, because he did not *declare* to the trial court that the work permit exception to the prohibition of driving under suspension constituted an affirmative defense, it may not be considered as such by the trial court. In support of this argument, the defendant again relies on General Statutes § 53a-12 (b), which provides: "When a defense *declared* to be an affirmative defense is raised at a trial, the defendant shall have the burden of establishing such defense by a preponderance of the evidence." (Emphasis added.) The short answer to this argument is that § 53a-12 (b) does not evince an intent to allow *a defendant* to decide those elements upon which he or she wishes to bear the burden of persuasion. Rather, the text of § 53a-12 (b) logically can be interpreted to mean simply that a "defendant bears the burden of proof of an affirmative defense . . . ." *State* v. *Person*, 236 Conn. 342, 353, 673 A.2d 463 (1996). The defendant's interpretation of § 53a-12 (b) effectively would allow all defendants to assign to the state the burden of proving the nonexistence of a defense merely by not declaring to the trial court that such a defense is an "affirmative" defense, the legislature's designation to the contrary notwithstanding. We have never suggested that § 53a-12 (b) authorizes a defendant to shift the burden of persuasion to the state simply by not declaring a defense to be an affirmative defense.

The defendant finally notes that there are several other motor vehicle offenses similar to the offense with which the defendant was charged in this case, for which a claim of the absence of a condition is a general, rather than an affirmative, defense. For example, the defendant points to General Statutes § 14-213, which pro-

vides: "Each operator of a motor vehicle shall carry his operator's license while operating such vehicle. Failure to carry such operator's license as required by the provisions of this section shall be an infraction." The defendant argues that, to establish a violation of § 14-213, the state would be required to prove beyond a reasonable doubt that the operator was not carrying his license. Similarly, the defendant argues that, in this case, the state is required to prove that the defendant was not operating his motor vehicle pursuant to a work permit. We disagree. The obvious difference between the §§ 14-213 and 14-215 (c) is that driving without carrying an operator's license *is* an element of a § 14-213 offense, whereas driving outside the parameters of a work permit *is not* an element of a § 14-215 (c) offense. Just as the state would have been required to prove all of the elements of a § 14-213 offense beyond a reasonable doubt had it charged the defendant with a violation of § 14-213, the state, in this case, was required to prove all of the elements of a § 14-215 (c) offense, the offense with which the defendant actually was charged.

## II

Having concluded that the legislature intended the work permit exception found in § 14-37a to serve as an affirmative defense to a violation of § 14-215 (c), we next must determine whether requiring the defendant to bear the burden of persuasion with respect to such an affirmative defense is constitutional. "The proper approach to resolving this question, as dictated by *Patterson* [v. *New York*, supra, 432 U.S. 210], is first to determine the elements of [driving under suspension], and second to determine whether the defense of [driving pursuant to a valid work permit] necessarily negates any of those elements." *White* v. *Arn*, 788 F.2d 338,

343–44 (6th Cir. 1986), cert. denied, 480 U.S. 917, 107 S. Ct. 1370, 94 L. Ed. 2d 686 (1987).[18]

"In order to establish a violation of § 14-215 (a), the state must prove two elements: (1) that the defendant was operating a motor vehicle; and (2) that the defendant's license or operating privileges were under suspension at the time. *State* v. *Jacobson*, [31 Conn. App. 797, 805, 627 A.2d 474 (1993), aff'd, 229 Conn. 824, 644 A.2d 331 (1994)]. . . . The only additional element required to prove a violation of subsection (c) is the requirement that the suspension at issue be on account of a violation of one of our statutes prohibiting the operation of motor vehicles by intoxicated operators." (Citation omitted; internal quotation marks omitted.) *State* v. *Cook*, 36 Conn. App. 710, 715, 653 A.2d 829 (1995).

Thus, we must consider whether proof that the defendant was driving within the parameters of a work permit necessarily entails disproof of an element of the offense of driving under suspension. We begin by noting that § 14-37a expressly conditions a person's ability to apply for a work permit on the fact that the person's license has been suspended. See footnote 2 of this opinion. Furthermore, there is nothing in the text of § 14-37a to suggest that a person's license is reinstated upon receiving a work permit. Id. On the contrary, even after the issuance of a work permit, a person's operator's license remains suspended and the person drives pursuant to that work permit rather than his or her operator's license. Therefore, proof that a person was driving pursuant to a valid work permit does not negate any element of the offense of driving under suspension.

[18] We note that the Appellate Court did not address this issue because it improperly had concluded that the trial court's instructions impermissibly diluted the state's burden of proving a violation of § 14-215 (c). See *State* v. *Valinski*, supra, 53 Conn. App. 41.

We conclude that, because § 14-37a does not "serve to negate any essential element of the crime which the state has the burden of proving beyond a reasonable doubt in order to convict [in this case]"; *State* v. *Arroyo*, supra, 181 Conn. 430, citing *Patterson* v. *New York*, supra, 432 U.S. 210; the requirement that the defendant bear the burden of persuasion with respect to the affirmative defense of driving pursuant to a valid work permit is constitutional under *Patterson*.

The judgment of the Appellate Court with respect to the defendant's conviction for driving under suspension is reversed and the case is remanded to that court with direction to consider the defendant's remaining claims[19] in accordance with law.

In this opinion the other justices concurred.

---

[19] Specifically, we direct the Appellate Court to consider the following claims pertaining to the defendant's conviction under § 14-215 (c): (1) whether the state's evidence was insufficient to sustain the jury's verdict of guilty; see *State* v. *Valinski*, supra, 53 Conn. App. 25, 25–26 n.3; (2) whether the prosecutor's misrepresentation to the jury that she would call a particular witness deprived the defendant of his right to a fair trial; see id., 25, 26 n.3; (3) whether the trial court failed to instruct the jury properly regarding the effect of the defendant's stipulation that he previously had been convicted of a violation of § 14-227a (a); see id., 36 n.18; and (4) whether the sequence of the trial court's jury instructions improperly diluted the state's burden of proof. See id.