STATE OF CONNECTICUT *v.* RUPERTO VICENTE
(AC 19471)

Lavery, C. J., and Spear and Mihalakos, Js.

Argued December 4, 2000—officially released April 10, 2001

*John E. Doran,* special public defender, with whom, on the brief, was *Neal Cone,* assistant public defender, for the appellant (defendant).

*Robert M. Spector,* deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Corinne Klatt,* supervisory assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, Ruperto Vicente, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1). The defendant claims that the trial court improperly instructed the jury on

reasonable doubt and the presumption of innocence, and that even if the individual instructions were proper, the overall "drumbeat repetition" of what is not a reasonable doubt diluted the state's burden of proof in violation of his due process rights under article first, §§ 8 and 9, of the constitution of Connecticut and the fourteenth amendment to the United States constitution.[1] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts.

---

[1] In his brief, the defendant also challenged as unconstitutional the following portions of the instruction: (1) "[Reasonable doubt is] something more than a guess or a surmise. It's not a conjecture or a fanciful doubt." (2) "It is a doubt for which you can in your own mind conscientiously give a reason." (3) "A reasonable doubt, in other words, is a real doubt, an honest doubt, a doubt which has its foundation in the evidence or the lack of evidence." (4) "It's the kind of doubt which in the serious affairs which concern you in everyday life you would pay heed and attention to. It is the kind of doubt which would make a reasonable person hesitate to act."

At oral argument, the defendant conceded that our Supreme Court has recently rejected constitutional challenges to instructional language identical in all material respects to the challenged statements. In the case of each challenge, the court concluded that the instructions as a whole did not dilute the state's burden of proof. See *State* v. *Montgomery*, 254 Conn. 694, 729, 759 A.2d 995 (2000) (rejecting constitutional challenge to instruction on meaning of reasonable doubt that included "reasonable doubt is not a doubt . . . suggested by the ingenuity of counsel . . . reasonable doubt is a doubt based on reason, not on the mere possibility of innocence . . . reasonable doubt . . . is a real doubt, an honest doubt, a doubt which has its foundation in the evidence or the lack of evidence; and . . . [reasonable doubt is] a doubt for which you can, in your own mind, conscientiously give a reason" [internal quotation marks omitted]); *State* v. *Griffin*, 253 Conn. 195, 206–207, 749 A.2d 1192 (2000) (rejecting constitutional challenge to instructions that reasonable doubt is "not a surmise, a guess or mere conjecture; [it is] a real doubt, an honest doubt, a doubt that has its foundation in the evidence or lack of evidence . . . a doubt [that] would cause a reasonably prudent person to hesitate to act in matters of importance" [internal quotation marks omitted]). Although the *Griffin* court approved the language challenged by the defendant that reasonable doubt would make a reasonable person hesitate to act, that instruction was not included in the court's instructions in this case. See footnote 2.

"[I]t is not . . . within our province to overrule or discard the decisions of our Supreme Court." (Internal quotation marks omitted.) *State* v. *Nunes,*

In 1993, the defendant, while attempting to join a gang, spent time with gang member Felix Betancourt. On May 25, 1993, the defendant and Betancourt went to visit a woman who was a friend of a rival gang member, Jose Velez. Upon approaching the woman's house, the defendant and Betancourt saw Velez, Victor Santiago and the victim, David Algarin, leaving the house. Betancourt gave the defendant a gun and instructed him to shoot at the three men. The defendant then shot and killed Algarin. Thereafter, the defendant was convicted of manslaughter in the first degree and this appeal followed.

All three of the defendant's claims involve the court's jury instructions, and none was properly preserved at trial.[2] He, therefore, seeks appellate review pursuant to

58 Conn. App. 296, 308, 752 A.2d 93, cert. denied, 254 Conn. 944, 762 A.2d 906 (2000). Accordingly, we reject these claims.

[2] The court instructed the jury on the state's burden of proof as follows: "Now, in this case, as in all criminal prosecutions, the defendant is presumed to be innocent until proven guilty beyond a reasonable doubt. This presumption of innocence was with the defendant when he was first presented for trial in this case. It continues with him throughout the trial. As far as you are concerned, the defendant is innocent and he continues to be innocent unless and until such time as all evidence produced here in the orderly conduct of the case, considered in the light of these instructions of law and deliberated upon by you in the jury room, satisfies you beyond a reasonable doubt that he's guilty.

"Thus, the presumption of innocence alone is sufficient to acquit the defendant. The presumption remains with the defendant throughout the trial unless you are satisfied beyond a reasonable doubt of the defendant's guilt from all the evidence in the case.

"Now, the burden to prove the defendant guilty of the crime with which he is charged is upon the state. The defendant does not have to prove his innocence. This means the state must prove beyond a reasonable doubt each and every element necessary to constitute the crime charged.

"Whether the burden resting upon the state is sustained depends not on the number of witnesses nor the quantity of the testimony, but on the nature and quality of the testimony. Please bear in mind that one witness' testimony, however, is sufficient to convict if you believe it beyond a reasonable doubt and if it establishes, either standing alone or together with any other testimony, all the elements of the crime beyond a reasonable doubt.

"Now, the phrase 'beyond a reasonable doubt' has no technical or unusual meaning. You can arrive at the real meaning of it by emphasizing the word

*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). In *Golding*, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id. "The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review."

'reasonable.' A reasonable doubt is a doubt for which a valid reason can be assigned. It's a doubt which is something more than a guess or a surmise. It's not a conjecture or a fanciful doubt. It's a reasonable doubt. It's not a doubt which is raised by somebody simply for the sake of raising doubts, nor is it a doubt suggested by the ingenuity of counsel or any of the jurors which is not justified by the evidence or lack of the evidence. A reasonable doubt is a doubt based on reason and not on the mere possibility of innocence. It is a doubt for which you can in your own mind conscientiously give a reason.

"A reasonable doubt, in other words, is a real doubt, an honest doubt, a doubt which has its foundation in the evidence or the lack of evidence. It's the kind of doubt which in the serious affairs which concern you in everyday life you would pay heed and attention to.

"Now, of course, absolute certainty in the affairs of life is almost never attainable, and the law does not require absolute certainty on the part of the jury before you return a verdict of guilty. The state does have to prove guilt beyond a reasonable doubt—I'm sorry—the state does not have to prove guilt beyond all doubt or to a mathematical or absolute certainty. What the law does require, however, is that after hearing all the evidence, if there's something in that evidence or lack of evidence which leaves in the minds of the jury as reasonable men and women a reasonable doubt about the fault of the accused, then the accused must be given the benefit of that doubt and acquitted. Any conclusion reasonably to be drawn from the evidence which is consistent with the innocence of the accused must prevail. If there's no reasonable doubt, then the accused must be found guilty. The test is one of reasonable doubt, a doubt based on reason and common sense."

(Internal quotation marks omitted.) *State* v. *Williams*, 60 Conn. App. 575, 578, 760 A.2d 948, cert. denied, 255 Conn. 922, 763 A.2d 1043 (2000).

Here, the record is adequate for review, and all three claims are of constitutional magnitude. The claims nonetheless fail under the third prong of *Golding* because no constitutional violation clearly exists.

"When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Cramer*, 57 Conn. App. 452, 460, 749 A.2d 60, cert. denied, 253 Conn. 924, 754 A.2d 797 (2000).

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. . . . It is axiomatic that the state is required to prove all the essential elements of the crimes charged beyond a reasonable doubt in order to obtain a conviction. . . . A jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and . . . afford[s] proper guidance for their determination of whether those elements were present. . . . Furthermore, it is well established that [a]n instruction that dilutes the state's burden, or places a

burden on the defendant to prove his innocence, is unconstitutional." (Citations omitted; internal quotation marks omitted.) *State* v. *Valinski*, 254 Conn. 107, 120, 756 A.2d 1250 (2000). With these standards in mind, we now turn to the defendant's claims.

I

The defendant first claims that the court improperly instructed the jury on reasonable doubt by stating that "if there's something in that evidence or lack of evidence which leaves in the minds of the jury as reasonable men and women a reasonable doubt about the guilt of the accused, then the accused must be given the benefit of that doubt and acquitted." Specifically, the defendant argues that "the benefit of the doubt" language diluted the state's burden of proof because it suggested that a reasonable doubt can arise only in close cases "where the scales are evenly balanced." This claim is completely without merit.

The defendant's argument is constructed around the meaning of the well known phrase "benefit of the doubt." The claim is problematic, however, because the defendant misrepresents the court's jury instructions. In referring to the instructions, he has changed the actual words "benefit of *that* doubt" to "benefit of *the* doubt." (Emphasis added.) The significance of this change is apparent when we consider the context of the instruction.

The court said: "What the law does require, however, is that after hearing all the evidence, if there is something in that evidence or lack of evidence which leaves in the minds of the jury as reasonable men and women a reasonable doubt about the guilt of the accused, then the accused must be given the benefit of *that doubt* and acquitted." (Emphasis added.) It is clear that the phrase "benefit of that doubt" refers back to the words

"reasonable doubt." The instruction in no way suggests that the jury could acquit the defendant only in a close case where the jury could give the defendant "the benefit of the doubt." Accordingly, we conclude that no injustice could have resulted from this portion of the instruction and the claim must fail under the third prong of *Golding*.

## II

The defendant next claims that the court improperly instructed the jury on the presumption of innocence by stating that "[a]ny conclusion reasonably to be drawn from the evidence which is consistent with the innocence of the accused must prevail." Specifically, the defendant asserts that this was a "two hypothesis" instruction which suggested that a preponderance of the evidence standard should be used.

We decline to review this inadequately briefed claim. The defendant's argument consists of six sentences that do not explain why this is a "two hypothesis" instruction or how it could result in the jury applying a preponderance standard to the evidence. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *In re Shane P.*, 58 Conn. App. 234, 243–44, 753 A.2d 409 (2000); *State* v. *Henderson*, 47 Conn. App. 542, 558, 706 A.2d 480, cert. denied, 244 Conn. 908, 713 A.2d 829 (1998); see also *In re Bruce R.*, 234 Conn. 194, 216, 662 A.2d 107 (1995).

## III

The defendant finally claims that, even if the individual statements were constitutional, the "drumbeat repe-

tition" in the instructions as to what did not constitute a reasonable doubt unconstitutionally diluted the state's burden of proof. We are not persuaded.

The defendant provides little support for this claim. He refers only to a sister state's Supreme Court decision that recommended that courts refrain from giving lengthy jury instructions regarding reasonable doubt. See *Winegeart* v. *State*, 665 N.E.2d 893, 898 (Ind. 1996). In that decision, the court warned against a "drumbeat repetition" of what is not a reasonable doubt but found no error in the instructions. The court recommended that Indiana trial courts thereafter follow an instruction on reasonable doubt crafted by the Federal Judicial Center.

Here, the court emphasized repeatedly that the burden of proof was on the state.[3] Moreover, the court's instructions on reasonable doubt were no lengthier than those previously approved by our Supreme Court in other cases. See, e.g., *State* v. *Montgomery*, 254 Conn. 694, 729–30 n.39, 759 A.2d 995 (2000); *State* v. *Valinski*, supra, 254 Conn. 117–18 n.13; *State* v. *Griffin*, 253 Conn. 195, 203–204 n.12, 749 A.2d 1192 (2000). We, therefore, conclude that the court's instructions to the jury did not satisfy the third prong of *Golding* because they were correct in law, sufficient to guide the jury without being misleading and in no way resulted in manifest injustice.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] See footnote 2.