STATE OF CONNECTICUT *v.*
CONSTANCE ANDRESEN
(SC 16437)

Sullivan, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.

Argued March 22—officially released May 29, 2001

*Ethan Levin-Epstein*, with whom, on the brief, was *Monika Lahiri Escoriaza*, for the appellant (defendant).

*Robert M. Spector*, deputy assistant state's attorney, with whom were *John F. Blawie*, senior assistant state's attorney, and, on the brief, *Eugene J. Callahan*, state's attorney, and *Kevin Russo*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. The primary issue in this appeal is whether a defendant charged with selling unregistered securities under the criminal provisions of the Connecticut Uniform Securities Act (CUSA), now General Statutes §§ 36b-2 to 36b-33,[1] has the burden of persuasion on

---

[1] Because the transactions that formed the basis of the charges against the defendant in this case occurred between 1991 and 1993, they were governed by the provisions of CUSA as they existed as early as the 1991 revision of the General Statutes. See General Statutes (Rev. to 1991) § 36-470 et seq. In 1995, CUSA was transferred from §§ 36-470 through 36-502 to §§ 36b-2 through 36b-33 of the General Statutes, with only minor technical changes not relevant here having occurred to some of the provisions. For purposes of clarity, we refer herein to the statutes as codified in the 1995 revision of the statutes as they existed at the time the defendant was charged.

the issue of whether the securities were exempt from registration. The defendant, Constance Andresen,[2] was convicted of five counts of selling unregistered securities in violation of General Statutes (Rev. to 1995) § 36b-16.[3] On appeal, the defendant concedes that the securi-

If no changes other than the transfer occurred, references are to the current revision.

[2] At the time that the events in this case transpired, the defendant was married to John Andresen, who died in 1996. She has since remarried and is now known as Constance Tanter. All references herein to the defendant's husband are to John Andresen.

[3] General Statutes (Rev. to 1995) § 36b-16 provides: "No person shall offer or sell any security in this state unless (1) it is registered under sections 36b-2 to 36b-33, inclusive, or (2) the security or transaction is exempted under section 36b-21."

General Statutes (Rev. to 1995) § 36b-21 provides exemptions from the registration requirements, with subsection (a) exempting twenty-one specific types of securities; see footnote 21 of this opinion; and subsection (b) exempting fifteen specific transactions. General Statutes (Rev. to 1995) § 36b-21 (b) provides: "The following transactions are exempted from sections 36b-16 and 36b-22: (1) Any isolated nonissuer transaction, whether effected through a broker-dealer or not; (2) any nonissuer distribution of an outstanding security if (A) a recognized securities manual contains the names of the issuer's officers and directors, a balance sheet of the issuer as of a date within eighteen months, and a profit and loss statement for either the fiscal year preceding that date or the most recent year of operations, except that the exemption shall not be available for any distribution of securities issued by a blank check company, shell company, dormant company or any issuer that has been merged or consolidated with or has bought out a blank check company, shell company or dormant company or (B) the security has a fixed maturity or a fixed interest or dividend provision and there has been no default during the current fiscal year or within the three preceding fiscal years, or during the existence of the issuer and any predecessors if less than three years, in the payment of principal, interest, or dividends on the security; (3) any nonissuer transaction effected by or through a registered broker-dealer pursuant to an unsolicited order or offer to buy; but the commissioner may by regulation require that the customer acknowledge upon a specified form that the sale was unsolicited, and that a signed copy of each such form be preserved by the broker-dealer for a specified period or that the confirmation delivered to the purchaser or a memorandum delivered in connection therewith shall confirm that such purchase was unsolicited by the broker-dealer or any agent of the broker-dealer; (4) any transaction between the issuer or other person on whose behalf the offering is made and an underwriter, or among underwriters; (5) any transaction in a bond or other evidence of indebtedness secured by a

ties were not registered, but contends that there was

real or chattel mortgage or deed of trust, or by an agreement for the sale of real estate or chattels, if the entire mortgage, deed of trust, or agreement, together with all the bonds or other evidences of indebtedness secured thereby, is offered and sold as a unit; (6) any transaction by an executor, administrator, sheriff, marshal, receiver, trustee in bankruptcy, creditors' committee in a proceeding under the Bankruptcy Act, guardian, or conservator; (7) any transaction executed by a bona fide pledgee without any purpose of evading sections 36b-2 to 36b-33, inclusive; (8) any offer or sale to a state bank and trust company, a national banking association, a savings bank, a savings and loan association, a federal savings and loan association, a credit union, a federal credit union, trust company, insurance company, investment company as defined in the Investment Company Act of 1940, as amended, pension or profit-sharing trust, or other financial institution or institutional buyer, or to a broker-dealer, whether the purchaser is acting for itself or in some fiduciary capacity; (9) (A) subject to the provisions of this subdivision, any transaction not involving a public offering within the meaning of Section 4(2) of the Securities Act of 1933, as amended, and the rules and regulations thereunder; (B) subject to the provisions of this subdivision, any transaction made in accordance with the uniform exemption from registration for small issuers authorized in Section 19(c)(3)(C) of the Securities Act of 1933, as amended. The exemptions set forth in subdivisions (9)(A) and (9)(B) of this subsection shall not be available for transactions in securities issued by any blank check company, shell company or dormant company. The exemptions set forth in subdivisions (9)(A) and (9)(B) of this subsection may, with respect to any security or transaction or any type of security or transaction, be modified, withdrawn, further conditioned or waived as to conditions, in whole or in part, conditionally or unconditionally, by the commissioner, acting by regulation, rule or order, on a finding that such regulation, rule or order is necessary or appropriate in the public interest or for the protection of investors. A fee of one hundred fifty dollars shall accompany any filing made with the commissioner pursuant to this subdivision; (10) any offer or sale of a preorganization certificate or subscription if (A) no commission or other remuneration is paid or given directly or indirectly for soliciting any prospective subscriber, (B) the number of subscribers does not exceed ten, and (C) no payment is made by any subscriber; (11) any transaction pursuant to an offer to existing security holders of the issuer, including persons who at the time of the transaction are holders of convertible securities, nontransferable warrants, or transferable warrants exercisable within not more than ninety days of their issuance, if (A) no commission or other remuneration other than a standby commission is paid or given directly or indirectly for soliciting any security holder in this state, or (B) the issuer first files a notice, in such form and containing such information as the commissioner may by regulation prescribe, specifying the terms of the offer and the commissioner does not by order disallow the exemption within the next ten full business days; (12) any offer, but

insufficient evidence presented by the state to prove that the securities were not exempt from registration.[4] The defendant claims that the trial court improperly

not a sale, of a security for which registration statements have been filed under both sections 36b-2 to 36b-33, inclusive, and the Securities Act of 1933, as amended, if no stop order or refusal order is in effect and no public proceeding or examination looking toward such an order is pending under either said sections or the Securities Act of 1933, as amended; (13) any transaction exempt under Section 4(1), Section 4(4) or section 4(6) of the federal Securities Act of 1933, as amended, and the rules and regulations thereunder. With respect to transactions exempt under section 4(6) of the federal Securities Act of 1933, as amended, the issuer shall, prior to the first sale, file with the commissioner a notice, in such form and containing such information as the commissioner may by regulation, rule or order prescribe. A fee of one hundred fifty dollars shall accompany any such filing made pursuant to this subdivision; (14) any transaction if all the following conditions are satisfied; (A) The offer and sale is effectuated by the issuer of the security; (B) the total number of purchasers of all securities of the issuer does not exceed ten. A subsequent sale of securities registered under sections 36b-2 to 36b-33, inclusive, or sold pursuant to an exemption under said sections other than this subdivision shall not be integrated with a sale pursuant to this exemption in computing the number of purchasers hereunder. For the purpose of this subdivision, each of the following is deemed to be a single purchaser of a security: A husband and wife, a child and his parent or guardian when the parent or guardian holds the security for the benefit of the child, a corporation, a partnership, an association or other unincorporated entity, a joint stock company, or a trust, but only if the corporation, partnership, association, unincorporated entity, joint stock company, or trust was not formed for the purpose of purchasing the security; (C) no advertisement, article, notice or other communication published in any newspaper, magazine or similar medium, or broadcast over television or radio, or any other general solicitation is used in connection with the sale; and (D) no commission, discount or other remuneration is paid or given directly or indirectly in connection with the offer and sale, and the total expenses, excluding legal and accounting fees, in connection with the offer and sale do not exceed one per cent of the total sales price of the securities. For purposes of this subdivision, a difference in the purchase price among the purchasers shall not, in and of itself, be deemed to constitute indirect remuneration; (15) any transaction that the commissioner by regulation, rule or order may exempt, conditionally or unconditionally, on a finding that registration is not necessary or appropriate in the public interest or for the protection of investors."

[4] General Statutes (Rev. to 1995) § 36b-21 (b) provides in relevant part: "(9)(A) [S]ubject to the provisions of this subdivision, any transaction not involving a public offering within the meaning of Section 4(2) of the Securities Act of 1933, as amended, and the rules and regulations thereunder;

placed on her the burden of proving that the securities were exempt, and that, by shifting the burden of proving this exemption to her, the trial court deprived her of her constitutional right to due process under the federal and state constitutions.[5] The defendant also contends that the trial court improperly admitted into evidence a cease and desist order that had been issued against her by the state department of banking (department) in 1985, and improperly permitted testimony concerning that order. Finally, the defendant claims that her reasonable reliance on the advice of counsel precluded a conviction for selling unregistered securities. We dis-

(B) subject to the provisions of this subdivision, any transaction made in accordance with the uniform exemption from registration for small issuers authorized in Section 19(c)(3)(C) of the Securities Act of 1933, as amended. The exemptions set forth in subdivisions (9)(A) and (9)(B) of this subsection shall not be available for transactions in securities issued by any blank check company, shell company or dormant company. The exemptions set forth in subdivision (9)(A) and (9)(B) of this subsection may, with respect to any security or transaction or any type of security or transaction, be modified, withdrawn, further conditioned or waived as to conditions, in whole or in part, conditionally or unconditionally, by the commissioner, acting by regulation, rule or order, on a finding that such regulation, rule or order is necessary or appropriate in the public interest or for the protection of investors. A fee of one hundred fifty dollars shall accompany any filing made with the commissioner pursuant to this subdivision . . . ." See also Regs., Conn. State Agencies § 36b-31-21b-9a.

[5] The due process clause of the fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

Article first, § 8, of the Connecticut constitution provides in part: "No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law . . . ."

Although we note that " '[t]he due process provisions of the state and federal constitutions generally have the same meaning and impose similar constitutional limitations' "; *Ghant* v. *Commissioner of Correction*, 255 Conn. 1, 18 n.16, 761 A.2d 740 (2000); in this case, "[t]he defendant has not offered any independent and adequate analysis under the state constitution. We therefore confine our analysis to [her] claims under the federal constitution. *State* v. *Beltran*, 246 Conn. 268, 277 n.7, 717 A.2d 168 (1998); *State* v. *Porter*, 241 Conn. 57, 133 n.77, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998)." *State* v. *Heredia*, 253 Conn. 543, 550 n.10, 754 A.2d 114 (2000).

agree with the defendant and affirm the judgment of the trial court.

The record contains the following relevant facts. In early 1972, John Andresen and two associates formed a research and development company called Microbyx Corporation (Microbyx), which they incorporated in Delaware. Microbyx developed a specialized tampon-like device for collecting cells from menstrual fluid that, potentially, could be utilized for the early detection of cervical and endometrial cancers. Microbyx had planned to market the device as an easier and more reliable means of obtaining cell samples for cancer screening than the Pap smear test. To date, Microbyx has never marketed the device, never turned a profit, and has no employees, other than two officers.

The defendant married John Andresen in 1976 and began serving as corporate secretary and chief financial officer of Microbyx in 1984. Although the defendant had not become involved officially with Microbyx in a managerial capacity until that time, she had engaged in activities relating to its financing in 1981. After joining Microbyx, the defendant devoted the bulk of her time to the company and she and her husband conducted almost all of the business from their home in New Canaan. Sarles Associates, Inc. (Sarles Associates), an investment management and advising company that the defendant's husband had formed and controlled, provided management services to Microbyx. Beginning in 1984, Microbyx paid Sarles Associates monthly fees ranging from $8000 to $15,000.

In 1983, after receiving a complaint from an investor who had purchased securities from the company, the department began investigating Microbyx. The department discovered that Microbyx securities were not registered in Connecticut and promptly issued to the defendant and her husband a cease and desist order to

prohibit further sales. The defendant and her husband requested a hearing on the cease and desist order, which was held on March 9, 1984. As a result of the hearing, the department issued findings of fact and conclusions of law, and ordered that the original cease and desist order enter permanently against the defendant and her husband.[6]

In 1987, Microbyx filed an application with the department to register its securities by coordination.[7] The department requested that Microbyx provide a list of all of those people who had invested in the company prior to 1987 and explain on which exemption from registration it had relied in selling those securities. Microbyx withdrew the application shortly thereafter.

In 1993, Microbyx filed another application with the department to register securities by qualification.[8] The

[6] The original cease and desist order dated January 12, 1984, which was made permanent by the department on March 19, 1985, provided: "The [c]ommissioner [of the department] therefore orders that [John Andresen and Constance Andresen] cease and desist from any offer or sale of securities in or from Connecticut." A subsequent appeal of the 1985 order was dismissed by the Superior Court on August 15, 1986.

[7] "Any security for which a registration statement has been filed under the Securities Act of 1933 in connection with the same offering may be registered [in Connecticut] by coordination." General Statutes § 36b-17 (a). "In essence, the coordination procedure requires filing at the state level copies of the registration statement filed with the [Securities Exchange Commission] as well as amendments. The [state] securities administrator may require the filing of other documents . . . such as the articles of incorporation or the agreement among underwriters. If specific conditions are met, the registration statement automatically becomes effective at the state level at the moment the federal registration becomes effective." 1 L. Loss & J. Seligman, Securities Regulation (3d Ed. 1989) p. 103; see also General Statutes § 36b-17 (c); Regs., Conn. State Agencies § 36b-31-17a.

[8] "Any security may be registered [in Connecticut] by qualification." General Statutes § 36b-18 (a). "The full type of registration is called registration by 'qualification.' This procedure must be used when no other procedure is available and may be used in any case." 1 L. Loss & J. Seligman, Securities Regulation (3d Ed. 1989) pp. 104–105; see General Statutes § 36b-18 (b) (listing information and documents required for registration by qualification). Registration by qualification "becomes effective when the commis-

department then issued subpoenas to Microbyx, the defendant and her husband. On April 13, 1994, the defendant testified before the department regarding her possible sale of unregistered Microbyx securities between 1991 and 1993. After turning over to the department records of prior sales, Microbyx attempted to withdraw its second application. The department did not permit the withdrawal,[9] and instead initiated a further investigation that culminated in criminal charges against the defendant.

From 1990 to 1993, approximately ninety investors purchased securities from Microbyx, with the defendant or her husband listed on the stock certificates as the seller. At trial, several investors testified that the defendant and her husband had solicited their stock purchases and had represented to them that Microbyx had a patented, market-ready device approved by the federal Food and Drug Administration that would lead to a public offering of Microbyx stock and returns on their investments. Many were novice investors, and some were given unpaid management positions with Microbyx after they had purchased the securities. The investors were not informed of the cease and desist order, nor were they informed that the device collected cell samples that were of little use in diagnosing cancer.

Between 1990 and 1994, investors poured $1.3 million into Microbyx while the company spent only $35,000 on research and development for the cell collection device. More than $1 million was funneled to the defen-

---

sioner [of banking] so orders." General Statutes § 36b-18 (c); see also Regs., Conn. State Agencies § 36b-31-18.

[9] The department did not permit the withdrawal because the prospectus submitted in connection with the 1993 application for registration by qualification had omitted information that the 1987 application had contained. Specifically, the 1993 prospectus deleted information that the cell collection device was considered by members of the medical community as capable of procuring only cell samples "of little or no diagnostic value." Likewise, the 1993 prospectus failed to mention the permanent 1985 cease and desist order.

dant and her husband either directly or indirectly through Sarles Associates.

The state charged the defendant in 1995 with five counts of securities fraud in violation of General Statutes (Rev. to 1995) § 36b-4 (2),[10] and five counts of selling unregistered securities in violation of § 36b-16.[11] A trial to the court began on August 3, 1999, and continued through August 6, 1999. The trial court, *Hiller, J.*, found the defendant guilty on the five counts of selling unregistered securities and acquitted her of all charges involving securities fraud. The defendant received a total sentence of ten years incarceration, suspended after two years, five years of probation and a fine of $10,000.[12] From the judgment of conviction, the defendant appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Before addressing the defendant's claims, we note that state securities laws, or "blue sky laws,"[13] are reme-

---

[10] General Statutes (Rev. to 1995) § 36b-4 provides: "No person shall, in connection with the offer, sale or purchase of any security, directly or indirectly: (1) Employ any device, scheme or artifice to defraud; (2) make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or (3) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."

[11] See footnote 3 of this opinion for the text of § 36b-16.

[12] General Statutes § 36b-28 (b) provides: "Any person who wilfully violates any other provision of sections 36b-2 to 36b-33, inclusive, shall be fined not more than two thousand dollars or imprisoned for not more than two years or both."

[13] The term "blue sky law first came into general use to describe legislation aimed at promoters who would sell building lots in the blue sky in fee simple." (Internal quotation marks omitted.) 1 L. Loss & J. Seligman, Securities Regulation (3d Ed. 1989) p. 34; see also *Hall v. Geiger-Jones Co.*, 242 U.S. 539, 550, 37 S. Ct. 217, 61 L. Ed. 480 (1917) (upholding constitutionality of state securities regulations that targeted "speculative schemes which have no more basis than so many feet of blue sky"); cf. J. Macey & G. Miller, "Origin of the Blue Sky Laws," 70 Tex. L. Rev. 347, 359–60 n.59 (1991) (discussing origin of term and suggesting that it was borrowed from other

dial statutes. See *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 67, 699 A.2d 101 (1997); see also *Securities & Exchange Commission* v. *C. M. Joiner Leasing Corp.*, 320 U.S. 344, 353, 64 S. Ct. 120, 88 L. Ed. 88 (1943) (noting that state securities laws have "dominating purpose to prevent and punish fraudulent floating of securities"); *Connecticut National Bank* v. *Giacomi*, 233 Conn. 304, 320, 659 A.2d 1166 (1995) (noting that state securities laws contain antifraud provisions, require registration of brokers and sellers of securities and registration of securities themselves); *People* v. *Landes*, 84 N.Y.2d 655, 660, 645 N.E.2d 716, 621 N.Y.S.2d 283 (1994) ("purpose of [New York securities] statute is remedial: to protect the public from fraudulent exploitation in the offering and sale of securities"). "In 1977, the Connecticut legislature formally adopted the Uniform Securities Act (Uniform Act)." *Connecticut National Bank* v. *Giacomi*, supra, 233 Conn. 319. Although this court has had occasion to address civil liability under the Uniform Act; see id.; and has interpreted the criminal portions of the prior Connecticut Securities Act; see *State* v. *Kreminski*, 178 Conn. 145, 147–53, 422 A.2d 294 (1979); this case requires us to address, as a matter of first impression, the criminal provisions of CUSA that prohibit the sale of unregistered securities.

I

The defendant contends that the state failed to provide sufficient evidence to support a conviction for selling unregistered securities under § 36b-16. The defendant claims that the evidence at trial "clearly established that the transactions at issue were exempt from registration under the private placement exemption . . . ." See General Statutes (Rev. to 1995) § 36b-

types of fraud, such as fraudulent land promotions, and simply carried over to securities fraud).

21 (b) (9).[14] The defendant contends that this issue "was properly preserved for appeal by [a] motion to set aside the verdict made by the defendant at the close of evidence." Our review of the record shows that no such motion was filed. Moreover, the defendant has neither requested review of her claim as plain error; Practice Book § 60-5;[15] nor has she sought review under *State v. Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989) (establishing requirements for appellate review of unpreserved claims). Consequently, we decline to review this claim because it was neither raised sufficiently at trial nor properly preserved for appeal.[16]

---

[14] See footnote 4 of this opinion for the text of § 36b-21 (b) (9).

[15] Practice Book § 60-5 provides in relevant part: "The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law.

"The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . .

"If the court deems it necessary to the proper disposition of the cause, it may remand the case for a further articulation of the basis of the trial court's factual findings or decision.

"It is the responsibility of the appellant to provide an adequate record for review as provided in Section 61-10."

[16] At trial, the defendant contended that the securities qualified for the ten purchaser exemption under § 36b-21 (b) (14). See footnote 3 of this opinion. At sentencing, some two and one-half months following the judgment of conviction, the defendant candidly acknowledged that "there may have been an applicable exemption [that] none of us seemed to identify or examine properly" at trial. We note that the applicability of any of the statutory exemptions in § 36b-21 is a question of fact; see *People* v. *Morrow*, 682 P.2d 1201, 1206 (Colo. App. 1983), cert. denied, 682 P.2d 1201 (Colo. 1984) (availability of statutory exemption is question of fact); and that the trial court made no findings regarding the private placement exemption. See footnote 4 of this opinion. Therefore, we are unable to review this claim on appeal. *State* v. *Mukhtaar*, 253 Conn. 280, 290, 750 A.2d 1059 (2000) (issues of fact raised for first time on appeal not reviewable).

Before this court, the defendant contends, nonetheless, that the testimony of her expert witness, a securities lawyer not admitted to practice in Connecticut, sufficiently proved that the sales of Microbyx stock were exempt from registration under the private placement exemption, rather than the ten purchaser exemption that had been alleged at trial. Our review of that

*Ghant* v. *Commissioner of Correction,* 255 Conn. 1, 17, 761 A.2d 740 (2000) (inappropriate to engage in level of review not requested).

## II

The primary issue in this appeal is whether the trial court properly placed the burden of proving an exemption from registration on the defendant. The defendant contends that, because the trial court shifted the burden to her to prove that the securities or transactions were exempt, she was denied her constitutional right to due process under the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. See footnote 5 of this opinion. The defendant failed to object at trial and claims that this issue is reviewable under *State* v. *Golding,* supra, 213 Conn. 239–40 (defendant's unpreserved claim will fail unless "[1] the record is adequate to review the alleged claim of error; [2] the claim is of constitutional magnitude alleging the violation of a fundamental right; [3] the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and [4] if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt").

"The first two steps in the *Golding* analysis address the reviewability of the claim, while the last two steps involve the merits of the claim. *State* v. *Beltran,* 246 Conn. 268, 275, 717 A.2d 168 (1998)." (Internal quotation marks omitted.) *State* v. *Henry,* 253 Conn. 354, 359, 752 A.2d 40 (2000). In the absence of any one of the four *Golding* conditions, the defendant's claim will fail. *State* v. *Hafford,* 252 Conn. 274, 305, 746 A.2d 150, cert. denied, 331 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89

testimony, however, reveals that the defendant's expert gave no opinion as to whether the securities or transactions at issue were exempt under Connecticut law.

(2000); *State* v. *Golding*, supra, 213 Conn. 240. We agree with the defendant that the record of the trial court's decision to place on the defendant the burden of proving an exemption is adequate for review. Although the defendant did not object, if improper, the trial court's decision in this regard clearly implicates her constitutional right to a fair trial. See *State* v. *Taylor*, 239 Conn. 481, 512, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997) (jury instruction that dilutes state's burden of proof or places burden on defendant to prove innocence is unconstitutional); *State* v. *Wolff*, 237 Conn. 633, 669, 678 A.2d 1369 (1996) (due process requires for conviction proof beyond reasonable doubt of every fact necessary for crime charged). Indeed, the state does not dispute that the first two prongs have been met. See *State* v. *Golding*, supra, 239–40.

"[I]f we are persuaded that the merits of the defendant's claim should be addressed, we will review it and arrive at a conclusion as to whether the alleged constitutional violation clearly exists and whether it clearly deprived the defendant of a fair trial." Id., 241. We conclude that the defendant's claim does not satisfy the third condition under *Golding*, because she has failed to establish a constitutional violation that clearly deprived her of a fair trial. See id.

" '[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [she] is charged.' *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)." *State* v. *Valinski*, 254 Conn. 107, 120, 756 A.2d 1250 (2000).[17] "It is constitutionally permissible for the state

[17] The defendant contends that this court may not rely on *State* v. *Valinski*, supra, 254 Conn. 107, because it was decided one year after her trial in this case. *Valinski* concerned the issue of whether possession of a work permit allowing limited use of a motor vehicle constituted an affirmative defense to operating a motor vehicle with a suspended license; id., 121; rather than an exemption for selling unregistered securities, and our decision in this

to place the burden on a criminal defendant to prove by a preponderance of the evidence elements which would constitute an affirmative defense but which do not serve to negate any essential element of the crime which the state has the burden of proving beyond a reasonable doubt in order to convict. *Patterson* v. *New York*, 432 U.S. 197, 210, 97 S. Ct. 2319, 53 L. Ed. 2d 281 [(1977)]." *State* v. *Arroyo*, 181 Conn. 426, 430, 435 A.2d 967 (1980); *State* v. *Valinski*, supra, 120–21. Thus, the question is whether proving an exemption is an affirmative defense or whether the nonexistence of an exemption from registration under § 36b-21 is a required element for a conviction of selling unregistered securities under § 36b-16.

## A

The defendant contends that, to support a conviction under § 36b-16, the state must prove beyond a reasonable doubt that the security, in addition to being sold or offered, was not registered *and* was not exempt from registration. Specifically, the defendant claims that an exemption from registration is nowhere "declare[d] . . . to be an affirmative defense" by the legislature, and that, in accordance with General Statutes § 53a-12,[18] the state should have had the burden of disproving the exempt status of the securities or transactions beyond a reasonable doubt.

The state claims that the plain language of CUSA places on the defendant the burden of proving an

case is not dictated by *Valinski*. This court's reasoning in that case and the cases cited therein, is, however, no less apt merely because *Valinski* was decided subsequent to the trial in this case.

[18] General Statutes § 53a-12 provides: "(a) When a defense other than an affirmative defense, is raised at a trial, the state shall have the burden of disproving such defense beyond a reasonable doubt.

"(b) When a defense declared to be an affirmative defense is raised at a trial, the defendant shall have the burden of establishing such defense by a preponderance of the evidence."

exemption and that, because an exemption from registration is an affirmative defense, rather than an element of the crime of selling unregistered securities, the trial court properly placed the burden on the defendant to prove that the securities fell within an exemption. We agree with the state.

Whether an exemption from registration is an affirmative defense to the crime of selling unregistered securities requires us to construe provisions of CUSA. "Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *State* v. *Murray*, 254 Conn. 472, 487–88, 757 A.2d 578 (2000). On the basis of these factors, we conclude that an exemption from registration under CUSA is an affirmative defense to the charge of selling unregistered securities under § 36b-16.

The language of CUSA is clear. General Statutes (Rev. to 1995) § 36b-21 (d) provides that "[i]n any proceeding under sections 36b-2 to 36b-33, inclusive, the burden of proving an exemption or an exception from a definition is upon the person claiming it." The defendant does not dispute that the reference to "sections 36b-2 to 36b-33, *inclusive*" includes § 36b-16, the statute that defines the prohibited conduct of which she was found guilty. (Emphasis added.) She claims, without citing any legal authority, that simply because § 36b-21 (d) is codified among the other provisions of CUSA, rather than in the Penal Code, it "applies only to civil or administrative proceedings, not criminal trials." We are not persuaded.

The defendant's reliance on General Statutes § 53a-2 is misplaced. That section applies generally to offenses defined in the Penal Code or offenses defined elsewhere in the General Statutes, "unless otherwise expressly provided or unless the context otherwise requires . . . ."[19] Section 36b-21 (d) applies specifically to the provisions of CUSA and expressly provides that a party claiming an exemption or an exception from a definition shall have the burden of proof on that issue. "As a matter of statutory construction, specific statutory provisions are presumed to prevail over more general statutory provisions dealing with the same overall subject matter. *McKinley* v. *Musshorn*, 185 Conn. 616, 623–24, 441 A.2d 600 (1981); *Edmundson* v. *Rivera*, 169 Conn. 630, 635, 363 A.2d 1031 (1975)." *State* v. *Torres*, 206 Conn. 346, 359, 538 A.2d 185 (1988); see *Velez* v. *Commissioner of Correction*, 250 Conn. 536, 550, 738 A.2d 604 (1999). Had the legislature intended the burden articulated in § 36b-21 (d) to apply *only* in civil matters, it certainly could have drawn that distinction in the text of the statute. See *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 195, 663 A.2d 1001 (1995) ("[w]e will not impute to the legislature an intent that is not apparent from unambiguous statutory language in the absence of a compelling reason to do so").

In addition, the purpose of CUSA supports the conclusion that a defendant should bear, as an affirmative defense, the burden of proving that no registration was required for the offer or sale of the securities at issue. "[T]he primary purpose behind [CUSA] was to institute comprehensive registration requirements and thereby improve surveillance of securities trading." *Connecticut National Bank* v. *Giacomi*, supra, 233 Conn. 320,

---

[19] General Statutes § 53a-2 provides in relevant part that "[t]he provisions of [the Penal Code] shall apply to any offense defined in this title or the general statutes, unless otherwise expressly provided or unless the context otherwise requires . . . ."

citing Conn. Joint Standing Committee Hearings, Banks, Pt. 1, 1977 Sess., pp. 175–76, remarks of Banking Commissioner Lawrence Connell. Given this regulatory purpose, we conclude that, as a matter of policy, it would make little sense to construe the statute in a manner that would make it exceedingly difficult for the state to enforce the prohibition on the sale of unregistered securities in § 36b-16.[20]

Moreover, because numerous, varied exemptions exist under General Statutes (Rev. to 1995) § 36b-21 (a)[21]

---

[20] Although nothing in the legislative history addresses specifically the burden of proof for establishing an exemption from registration, the official commentary to § 402 (d) of the Uniform Act indicates that it simply "codifies existing law." L. Loss, Commentary on the Uniform Securities Act (1976) § 402 (d), official comment, p. 137; see also *Connecticut National Bank* v. *Giacomi*, supra, 233 Conn. 320 (noting that this court "may be assisted in ascertaining [legislative] intent by looking to the commentaries on the meaning of [the Uniform Act]").

[21] General Statutes (Rev. to 1995) § 36b-21 (a) provides: "The following securities are exempted from sections 36b-16 and 36b-22: (1) Any security including a revenue obligation issued or guaranteed by the United States, any state, any political subdivision of a state, or any agency or corporate or other instrumentality of one or more of the foregoing; or any certificate of deposit for any of the foregoing; (2) any security issued or guaranteed by Canada, any Canadian province, any political subdivision of any such province, any agency or corporate or other instrumentality of one or more of the foregoing, or any other foreign government with which the United States currently maintains diplomatic relations, if the security is recognized as a valid obligation by the issuer or guarantor; (3) any security issued by and representing an interest in or a debt of, or guaranteed by, any bank organized under the laws of the United States, or any bank, savings institution, or trust company organized and supervised under the laws of any state; (4) any security issued by and representing an interest in or a debt of, or guaranteed by, any federal savings and loan association, or any savings and loan or similar association organized under the laws of any state; (5) any security issued by and representing an interest in or a debt of, or guaranteed by, any insurance company organized under the laws of any state and authorized to do business in this state; (6) any security issued or guaranteed by any federal credit union or any credit union, industrial loan association, or similar association organized and supervised under the laws of this state; (7) any security issued or guaranteed by any railroad, other common carrier, public utility, or holding company which is (A) subject to the jurisdiction of the Interstate Commerce Commission; (B) a registered holding company under the Public Utility Holding Company Act of 1935 or a subsidiary of

such a company within the meaning of that act; (C) regulated in respect of its rates and charges by a governmental authority of the United States or any state; or (D) regulated in respect of the issuance or guarantee of the security by a governmental authority of the United States, any state, Canada, or any Canadian province; (8) any security listed or approved for listing upon notice of issuance on the New York Stock Exchange, the American Stock Exchange, the Chicago Board Options Stock Exchange and such other securities exchanges as may be designated by the commissioner from time to time, any security appearing on the list of over-the-counter securities approved for margin by the Board of Governors of the Federal Reserve System or any security designated or approved for designation upon notice of issuance as a national market system security on the National Association of Securities Dealers Automated Quotation System established pursuant to the Securities Exchange Act of 1934 if, in each case, quotations have been available and public trading has taken place for such class of security prior to the offer or sale of that security in reliance upon this exemption; any other security of the same issuer which is of senior or substantially equal rank; any security called for by subscription rights or warrants so listed, approved or designated; or any warrant or right to purchase or subscribe to any of the foregoing; (9) any security issued by any person organized and operated not for private profit but exclusively for religious, educational, benevolent, charitable, fraternal, social, athletic, or reformatory purposes, or as a chamber of commerce or trade or professional association; (10) any commercial paper which arises out of a current transaction or the proceeds of which have been or are to be used for current transactions, and which evidences an obligation to pay cash within nine months of the date of issuance, exclusive of days of grace, or any renewal of such paper which is likewise limited, or any guarantee of such paper or of any such renewal; (11) any security issued in connection with an employees' stock purchase, stock option, savings, pension, profit-sharing, or similar benefit plan; (12) any security issued by any cooperative apartment corporation incorporated under the laws of this state, located in and operating wholly within the borders of this state, in conjunction with the execution of proprietary leases; (13) any security issued by any person, organized and located in this state and operating exclusively for the purpose of promoting the industrial or commercial development of this state, or such development of any political subdivision thereof or such development of any regional planning area within this state, if such persons are approved by the commissioner of economic development and such approval has been certified, in writing, by said commissioner of economic development to the commissioner; such approval and certification shall be conclusive as to the nature and purpose of such person; (14) any security issued by the Connecticut Development Credit Corporation; (15) any security issued by any nonstock corporation, which is incorporated under the laws of this state as a cooperative marketing corporation and has its principal place of business in this state, and which is a farmers' cooperative organization as defined in Section 521 of the

and (b),[22] "[o]nce the seller has determined that a security falls within a class of exempt securities, that knowledge is peculiarly within the personal knowledge of the seller." *United States ex rel. Shott* v. *Tehan*, 365 F.2d 191, 195 (6th Cir. 1966), cert. denied, 385 U.S. 1012, 87 S. Ct. 716, 17 L. Ed. 2d 548 (1967). It is apparent that an exemption from registration is an affirmative defense to the charge of selling unregistered securities under § 36b-16. This conclusion comports with cases from other jurisdictions that maintain statutory provisions virtually identical to § 36b-16. See, e.g., id., 194–95; *Hunter* v. *State*, 330 Ark. 198, 201–202, 952 S.W.2d 145 (1997); *People* v. *Morrow*, 682 P.2d 1201, 1205 (Colo. App. 1983), cert. denied, 682 P.2d 1201 (Colo. 1984); *State* v. *Kershner*, 801 P.2d 68, 70 (Kan. App. 1990);

Internal Revenue Code of 1986, or any subsequent corresponding internal revenue code of the United States, as from time to time amended, if such corporation has been certified in writing by the Connecticut department of agriculture to the commissioner to be a bona fide cooperative marketing corporation; such certification shall be conclusive as to the nature and purpose of such corporation; (16) any security issued by all cooperative associations organized or existing under chapter 595; (17) any security issued by any person organized, located and operating within or from the borders of this state, when selling or offering for sale an interest in real estate limited partnerships or real estate syndications exclusively, if such person has obtained a permit from the real estate commission; (18) any security which, prior to or within sixty days after October 1, 1977, has been sold or disposed of by the issuer or bona fide offered to the public, but this exemption shall not apply to any new offer of any such security by an issuer or underwriter subsequent to such sixty days; (19) any interest or participation in any common trust fund or similar fund established and maintained by a bank, or by one or more banks under common control as otherwise authorized by general statute, exclusively for the collective investment and reinvestment of assets contributed thereto by such bank in its fiduciary capacity; (20) any security issued by a worker cooperative corporation formed under the provisions of sections 33-418f to 33-418o, inclusive; (21) any other security that the commissioner by regulation or order may exempt, conditionally or unconditionally, on a finding that registration is not necessary or appropriate in the public interest or for the protection of investors."

[22] See footnote 3 of this opinion for the text of § 36b-21 (b).

*State* v. *Crooks*, 84 Or. App. 440, 445–46, 734 P.2d 374 (1987).[23]

## B

Because an exemption is an affirmative defense to the crime of selling unregistered securities, the question devolves to whether requiring the defendant to bear the burden of proving the existence of an applicable exemption by a preponderance of the evidence passes constitutional muster. See *State* v. *Valinski*, supra, 254 Conn. 129–30. "The proper approach to resolving this question, as dictated by *Patterson* [v. *New York*, supra, 432 U.S. 210], is first to determine the elements of [the offense of selling unregistered securities], and second to determine whether the defense [that the securities were exempt from registration] necessarily negates any of those elements. *White* v. *Arn*, 788 F.2d 338, 343–44, (6th Cir. 1986), cert. denied, 480 U.S. 917, 107 S. Ct. 1370, 94 L. Ed. 2d 686 (1987)." (Internal quotation marks omitted.) *State* v. *Valinski*, supra, 129–30.

A conviction under § 36b-16 requires proof that the defendant (1) sold or offered a security in this state, and (2) that the security is not registered under §§ 36b-2 through 36b-33, inclusive. If we were to agree with

---

[23] The defendant also raised for the first time in her reply brief what is essentially a notice issue. See, e.g., *State* v. *Johnson*, 253 Conn. 1, 35–40, 751 A.2d 298 (2000) (discussing notice of elements of crime charged in plea agreement context). She claims that if this court were to decide that an exemption from registration is an affirmative defense, we could apply that determination only prospectively because it would amount to a substantive change in the law.

Although we need not decide this issue; see *State* v. *Garvin*, 242 Conn. 296, 312, 699 A.2d 921 (1997) (" 'the function of the appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief . . . [and] that function does not include raising an entirely new claim' "); we nevertheless reject it because the provision of the Uniform Act placing the burden of proving an exemption on the party claiming it, which was in effect at the time of the defendant's conduct, and at the time of her trial, simply codified existing law. See footnote 20 of this opinion.

the defendant that the state must also prove, in addition to the aforementioned elements, that the securities at issue were not exempt under § 36b-21, the state would be required to prove the nonexistence of some thirty-six exemptions. See footnotes 3 and 21 of this opinion. Given the remedial purpose of the Uniform Act; see *Connecticut National Bank* v. *Giacomi*, supra, 242 Conn. 67; we cannot conclude that such a construction is warranted. See *Southington* v. *Commercial Union Ins. Co.*, 254 Conn. 348, 358, 757 A.2d 549 (2000) (noting that "we read each statute in a manner that will not thwart its intended purpose or lead to absurd results" [internal quotation marks omitted]); *State* v. *Ehlers*, 252 Conn. 579, 593, 750 A.2d 1079 (2000) (same); *State* v. *Tinsley*, 181 Conn. 388, 403, 435 A.2d 1002 (1980), cert. denied, 449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981) (burden not on state to disprove exceptions to statute where exceptions not essential elements of crime charged), overruled in part on other grounds, *State* v. *Pinnock*, 220 Conn. 765, 788, 601 A.2d 521 (1992); *State* v. *Goetz*, 312 N.W.2d 1, 9 (N.D. 1981), cert. denied, 455 U.S. 924, 102 S. Ct. 1286, 71 L. Ed. 2d 467 (1982) (nonexistence of exemption from registration not element of offense of selling unregistered securities).

It is equally clear that the availability of an exemption from registration does not negate any of the essential elements of the crime of selling unregistered securities. An unregistered security or transaction that qualifies for one of the statutory exemptions enumerated in § 36b-21, and may be offered or sold in Connecticut because of its exempt status, is still an unregistered security. The mere fact that an issuer may legally sell such a security does not transform an otherwise unregistered security into one that is registered under CUSA. See *State* v. *Frost*, 57 Ohio St. 2d 121, 127, 387 N.E.2d 235 (1979) (not unconstitutional to require defendant to carry burden of

proof on exemption under Ohio blue sky law "because it does not require the defendant to negate any facts of the crime which the state must prove in order to convict").

Decisions from other jurisdictions addressing the crime of selling unregistered securities under the Uniform Act or similar provisions of state blue sky laws consistently have placed the burden on the defendant to prove an exemption. See, e.g., *United States ex rel. Shott* v. *Tehan,* supra, 365 F.2d 194; *State* v. *Goodman,* 110 Ariz. 524, 526, 521 P.2d 611 (1974); *Hunter* v. *State,* supra, 330 Ark. 201–202; *State* v. *Kershner,* supra, 801 P.2d 70; *Commonwealth* v. *David,* 365 Mass. 47, 53–54, 309 N.E.2d 484 (1974); *People* v. *Dempster,* 396 Mich. 700, 713–14, 242 N.W.2d 381 (1976); *Fullerton* v. *State,* 116 Nev.    , 8 P.3d 848, 850 (2000); *State* v. *Goetz,* supra, 312 N.W.2d 9–10; *State* v. *Frost,* supra, 57 Ohio St. 2d 127; *State* v. *Shepherd,* 989 P.2d 503, 509 (Utah App. 1999); cf. *People* v. *Morrow,* supra, 682 P.2d 1207 ("[o]nce the prosecution raised the issue of [the applicability of an exemption as an] affirmative defense, it assumed the burden of proving beyond a reasonable doubt that the affirmative defense was not applicable"); accord *Securities & Exchange Commission* v. *Ralston Purina Co.,* 346 U.S. 119, 126, 73 S. Ct. 981, 97 L. Ed. 1494 (1953) (imposition of burden of proof on issuer of securities seeking to utilize exemption is "fair and reasonable" because of "broadly remedial purposes of federal securities legislation").

Accordingly, we conclude that the existence and applicability of an exemption does not "serve to negate any essential element of the crime which the state has the burden of proving beyond a reasonable doubt in order to convict"; *State* v. *Arroyo,* supra, 181 Conn. 430; and that requiring the defendant to bear the burden of proof, by a preponderance of the evidence, with respect to the affirmative defense of an exemption from regis-

tration does not violate the defendant's right to due process under the fourteenth amendment to the United States constitution. *Patterson* v. *New York,* supra, 432 U.S. 210; *State* v. *Valinski,* supra, 254 Conn. 131; *State* v. *Arroyo,* supra, 430.[24]

### III

The defendant next claims that the trial court improperly admitted into evidence the cease and desist order that the department had issued against the defendant and her husband. The defendant contends that the cease and desist order "was neither relevant nor material" and its admission "prejudiced [her] by diverting attention from the actual issues in the case . . . [specifically] whether or not § 36b-16 [had been] violated." The defendant concedes that the evidence was admitted without objection, but seeks review under the plain error rule of Practice Book § 60-5. See footnote 15 of this opinion.

"Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . *Westport Taxi Service, Inc.* v. *Westport Transit District,* 235 Conn. 1, 25, 664 A.2d 719 (1995)." (Internal quotation marks omitted.) *State* v. *Taylor,* supra, 239 Conn. 502. We detect no impropriety in the trial court's admission of the cease and desist order.

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . [E]vidence need not exclude all other possibilities [to be relevant]; it is sufficient if it tends to support the

---

[24] Once the defendant satisfies his or her burden of persuasion regarding an exemption from registration, the burden shifts to the state to prove beyond a reasonable doubt that that particular exemption does not apply. See, e.g., *Commonwealth* v. *David,* supra, 365 Mass. 53–54; *People* v. *Dempster,* supra, 396 Mich. 713–14; *Fullerton* v. *State,* supra, 8 P.3d 850.

conclusion [for which it is offered], even to a slight degree. . . . [T]he fact that evidence is susceptible of different explanations or would support various inferences does not affect its admissibility, although it obviously bears upon its weight. So long as the evidence may reasonably be construed in such a manner that it would be relevant, it is admissible." (Internal quotation marks omitted.) *State* v. *Copas*, 252 Conn. 318, 326–27, 746 A.2d 761 (2000).

In this case, the defendant was charged with five counts of selling unregistered securities in violation of § 36b-16, as well as five counts of securities fraud in violation of § 36b-4 (2). See footnote 10 of this opinion. Several witnesses testified that the defendant had not informed them of the existence of the department's cease and desist order in connection with their purchases of Microbyx securities. In addition, the 1993 prospectus submitted by Microbyx to the department in conjunction with its efforts to register its securities did not mention the cease and desist order, as did the 1987 submission. See footnote 9 of this opinion. Thus, evidence of the cease and desist order was both relevant and material to the question of whether the defendant had violated § 36b-4 (2). The defendant has offered no compelling argument that suggests that she was unduly prejudiced by its admission for that purpose. Likewise, she does not argue, nor could she persuasively, that her acquittal on the fraud charges rendered the evidence improper. Accordingly, the defendant's claim that the trial court's admission of the cease and desist order amounts to plain error is without merit.[25] See *State* v. *Taylor*, supra, 239 Conn. 502.

---

[25] The defendant also claims that "[t]he record is ambiguous" as to whether the trial court relied on the defendant's violation of the cease and desist order as a basis for the conviction under § 36b-16. As explained previously, the cease and desist order was relevant to the fraud charges. To the extent that the defendant contends that ambiguity in the record requires reversal of her conviction under § 36b-16, we note that she was required to provide, in accordance with Practice Book § 60-5, an adequate record for review.

## IV

Finally, the defendant argues that because she reasonably relied on the advice of legal counsel in selling unregistered Microbyx securities, her convictions under § 36b-16 cannot stand. The defendant contends that she lacked "intent to violate the law" because she acted reasonably in relying on the advice of her lawyers. The state argues that § 36b-16 requires no specific intent to violate the law, but that it is a "strict liability" offense and that advice of counsel is "not a legitimate defense to the sale of unregistered securities . . . ." At oral argument before this court, the defendant conceded that, if a violation of § 36b-16 is in the nature of strict liability, requiring no specific intent to violate the law, then her claim regarding reliance on the advice of counsel "goes out the window."

"Whether or not a statutory crime requires mens rea or scienter as an element of the offense is largely a question of legislative intent to be determined from the general scope of the act and from the nature of the evils to be avoided." (Internal quotation marks omitted.) *State* v. *Swain*, 245 Conn. 442, 454, 718 A.2d 1 (1998). In *State* v. *Kreminski*, supra, 178 Conn. 145, this court reviewed a conviction under the Connecticut Securities Act, the predecessor to CUSA. In that case, the defendant argued that "the requirement of mens rea or evil intention should be effectively read into the statute." Id., 147. This court noted that "[p]ersonal blame on the part of the actor, except in the general sense that he should have known better or exercised a greater degree

See Practice Book § 61-10 ("[i]t is the responsibility of the appellant to provide an adequate record for review"); *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 38, 717 A.2d 77 (1998) ("[i]t is the responsibility of the appellant . . . to move for an articulation in order to clarify the basis of the trial court's decisions should such clarification be necessary for effective appellate review of the issue on appeal" [citation omitted]).

of care, is not a necessary element of many offenses where protection of the public against the harm which would result in the absence of regulation is the principal legislative concern." Id., 150. This court ultimately concluded that " '[s]tate of mind is of as little relevance in a charge of sale of an unregistered security by an unlicensed person . . . as it would be in a prosecution for a speeding violation.' " Id., 151, quoting *People* v. *Terranova*, 38 Colo. App. 476, 483, 563 P.2d 363 (1977).

As noted previously, the criminal provisions of CUSA; General Statutes § 36b-28; prohibit "wilful" violations thereof. See *State* v. *Kreminski*, supra, 178 Conn. 152 (noting that CUSA requires wilful violations); see also footnote 12 of this opinion. The issue in this case is whether "wilfully" as used in § 36b-28 requires that the defendant both wilfully engaged in prohibited conduct—that is, she wilfully sold unregistered securities—*and*, in so doing, maintained specific intent to violate the law. We conclude that wilfully violating provisions of the Uniform Act, and therefore CUSA, requires "proof that the person acted intentionally in the sense that [she] was aware of what [she] was doing. Proof of evil motive or intent to violate the law, or knowledge that the law was being violated, is not required." L. Loss, Commentary on the Uniform Securities Act (1976) § 204 (a) (2) (B), official comment, p. 29;[26] see *People* v. *Clem*, 39 Cal. App. 3d 539, 542, 114 Cal. Rptr. 359 (1974).

Although CUSA requires wilful conduct, wilfulness does not always amount to specific intent. "[W]illful is a word of many meanings, its construction often being influenced by its context. *Screws* v. *United States*, 325 U.S. 91, 101, 65 S. Ct. 1031, 89 L. Ed. 1495 (1943)." (Internal quotation marks omitted.) *In re Flanagan*,

[26] We note that the official comment to § 409 of the Uniform Act, the criminal provision requiring wilful violations, refers to the official comment under § 204 (a) (2) (B) for the meaning of the word wilfully. L. Loss, supra, § 409, official comment, p. 144.

240 Conn. 157, 182, 690 A.2d 865, cert. denied, 522 U.S. 865, 118 S. Ct. 172, 139 L. Ed. 2d 114 (1997). This court has construed the term to require less than specific intent to violate the law. See, e.g., *Doe* v. *Marselle*, 236 Conn. 845, 847, 859–60, 675 A.2d 835 (1996) ("conclud[-ing] that a wilful violation of [General Statutes] § 19a-583 requires only a knowing disclosure of confidential human immunodeficiency virus [HIV] related information," not evil intent); *State* v. *Dennis*, 150 Conn. 245, 246, 250–51, 188 A.2d 65 (1963) (holding that where defendant charged with "wilfully or unlawfully" committing "certain acts likely to impair the morals of a minor child, contrary to [General Statutes] § 53-21 . . . [s]pecific intent is not an element of the crime defined"); see also *United States* v. *Schwartz*, 464 F.2d 499, 509 (2d Cir.), cert. denied, 409 U.S. 1009, 93 S. Ct. 443, 34 L. Ed. 2d 302 (1972) (wilful violation of federal securities law requires only wilfulness to commit act, rather than specific intent to knowingly violate law); *United States* v. *Peltz*, 433 F.2d 48, 54–55 (2d Cir. 1970), cert. denied, 401 U.S. 955, 91 S. Ct. 974, 28 L. Ed. 2d 238 (1971) (defendant may be convicted of wilfully violating securities regulation of which he is unaware); *United States* v. *Hill*, 298 F. Sup. 1221, 1234 (D. Conn. 1969) (finding of specific intent not required for criminal violation of federal securities law).

"When the elements of a crime consist of a description of a particular act and a mental element not specific in nature, the only issue is whether the defendant intended to do the proscribed act. If [she] did so intend, [she] has the requisite general intent for culpability." (Internal quotation marks omitted.) *State* v. *McClary*, 207 Conn. 233, 240, 541 A.2d 96 (1988). "Intent to do the prohibited act, not intent to violate the criminal law, is the only intent requisite for conviction in the case of many crimes constituting violations of statutes in the nature of police regulations." (Internal quotation

marks omitted.) *State* v. *Swain*, supra, 245 Conn. 455. "[P]rotection of the financial interest of the public may not be as paramount as safeguarding its health and morals by suppressing activities which endanger those interests, nevertheless, it is a matter of serious concern . . . ." *State* v. *Kreminski*, supra, 178 Conn. 151–52. Requiring specific intent to violate CUSA as a predicate to enforcing its prohibition on the sale of unregistered securities effectively would diminish the statute's remedial purpose. See *Connecticut National Bank* v. *Giacomi*, supra, 242 Conn. 67.

We hold, as have the overwhelming majority of jurisdictions, that the offense of wilfully selling unregistered securities requires proof only that the defendant intended to do the act prohibited by the statute. See, e.g., *Bayhi* v. *State*, 629 So. 2d 782, 789 (Ala. App.), cert. denied, 629 So. 2d 782 (Ala. 1993); *People* v. *Clem*, supra, 39 Cal. App. 3d 542; *People* v. *Terranova*, supra, 38 Colo. App. 482; *State* v. *Montgomery*, 135 Idaho 348, 350–52, 17 P.3d 292 (2001); *Clarkson* v. *State*, 486 N.E.2d 501, 506–507 (Ind. 1985); *State* v. *Kershner*, supra, 801 P.2d 70–71; *State* v. *Dumke*, 901 S.W.2d 100, 103 (Mo. App. 1995); *State* v. *Irons*, 254 Neb. 18, 23–24, 574 N.W.2d 144 (1998); *State* v. *Russell*, 119 N.J. Super. 344, 351, 291 A.2d 583 (1972); *State* v. *Sheets*, 94 N.M. 356, 365, 610 P.2d 760 (App.), cert. denied, 94 N.M. 356, 610 P.2d 760 (1980); *State* v. *Goetz*, supra, 312 N.W.2d 12–13; *State* v. *Cox*, 17 Wash. App. 896, 903, 566 P.2d 935 (1977), cert. denied, 439 U.S. 823, 99 S. Ct. 90, 58 L. Ed. 2d 115 (1978).[27] No specific intent to violate the law is required

---

[27] The defendant cites no authority for the proposition that a conviction under § 36b-16 for selling unregistered securities requires specific intent to violate the law. Our research has revealed only one such case. See *Hentzner* v. *State*, 613 P.2d 821, 825–27 (Alaska 1980) (consciousness of wrongdoing required as separate element for conviction of selling unregistered securities; requires more than awareness of act but less than knowledge of illegality). At least one recent case characterized the *Hentzner* decision as "an aberration." See *State* v. *Dumke*, supra, 901 S.W.2d 104; see also *State* v. *Mueller*, 201 Wis. 2d 121, 134–35 n.3, 549 N.W.2d 455 (App. 1996) (noting apparent divergence of authority and no need to "enter the debate" concerning mental

for a conviction of selling unregistered securities under § 36b-16. Thus, the defendant's claim that her conviction must be reversed because she reasonably relied on the advice of counsel is unavailing.[28]

The judgment is affirmed.

In this opinion the other justices concurred.

---

state required for sale of unregistered securities). In our view, *Hentzner* is a solitary departure from otherwise uniform authority, and we decline to follow it.

[28] We assume for purposes of this appeal that the reasonable, good faith reliance on the advice of counsel, like intoxication, could, in some circumstances, negate specific intent and thereby negate a required element of the crime charged. See, e.g., *State* v. *Austin*, 244 Conn. 226, 239, 710 A.2d 732 (1998) (noting that " 'evidence of a defendant's intoxication is relevant to negate specific intent which is an essential element of the crime of murder' "). Because a conviction under § 36b-16 requires only general intent, the defendant's argument must fail. See *State* v. *Smith*, 210 Conn. 132, 138, 554 A.2d 713 (1989) (noting that intoxication "is generally held to be relevant to negate a crime of specific intent but not a crime of general intent").

We emphasize that this court has never applied the advice of counsel "defense" in such a manner, and we express no opinion on the viability of such a claim in other circumstances. See *Lurie* v. *Wittner*, 228 F.3d 113, 134 (2d Cir. 2000) (noting that "[t]here is no [United States] Supreme Court precedent requiring that an advice-of-counsel defense be allowed in state court; indeed, the situations in which the advice-of-counsel defense may be employed are severely limited"); but see *Ratzlaf* v. *United States*, 510 U.S. 135, 142 n.10, 114 S. Ct. 655, 126 L. Ed. 2d 615 (1994) (noting that specific intent to commit crimes defined in anti-structuring statutes might be negated by proof that defendant relied in good faith on advice of counsel).